Anthony James ROGERS, Appellant,

v.

DEPARTMENT OF FAMILY AND
PROTECTIVE SERVICES,
Appellee.[1]

No. 01–01–01152–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 17, 2005.

**1.** This agency was formerly known as the "Department of Protective and Regulatory Services." *See* TEX. GOV'T CODE ANN. § 531.001(4)(J) (Vernon Supp.2004–2005).

William B. Connolly, William B. Connolly & Associates, Houston, TX, for Appellant.

Sandra D. Hachem, Senior Assistant County Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal of a jury's finding that Anthony James Rogers's parental rights to his children, A.J.R., L.A.J., S.C.R., and P.L.R., should be terminated. In seven issues presented for review, Rogers contends (1) the statute providing for the trial court to determine whether an appeal from a termination of parental rights is frivolous is unconstitutional; (2) the trial court erred by (a) overruling his objections to the jury charge, (b) admitting into evidence the entire Department of Family & Protective Services (DFPS) case file, (c) allowing the caseworker to testify from inadmissible records, (d) allowing the caseworker to testify as an expert witness, and (e) allowing the child advocate supervisor to testify; and (3) the evidence was legally and factually insufficient to support the jury's finding. We affirm.

## Factual Background

DFPS caseworkers had been involved with Rogers's family since 1993. In 1995, caseworkers investigated and validated a report of physical abuse. After an emergency hearing, the trial court granted DFPS temporary managing conservatorship of L.A.J., A.J.R., and two other boys from the mother's previous marriage who are not parties to this appeal.[2] Shortly thereafter, DFPS sued to terminate both parents' relationships to their children, and it placed A.L.R., L.A.J., and S.C.R. in foster care. Initial reports indicated that the two older boys (ages five and six), who are not subject to this appeal, expressed fear of both their mother and their step-father, Rogers. The other children, those who are the subject of this appeal, were too young to be verbal. About a year later, P.L.R., was born.

In 1998, the two oldest boys were permanently reunified with their biological father, but the three other children remained in foster care until the beginning of 1999. In February 1999, L.A.J. and A.J.R. were returned to their biological mother. That same month, Rogers was released from prison (where he had been serving time because his probation in an offense unrelated to this case had been revoked), returned to Houston, and began participating with the rest of the family in intensive weekly reunification sessions. At DFPS's suggestion, Rogers did not immediately move back into the family's home. Meanwhile, bonding therapy began between the parents and S.C.R. S.C.R. was returned to the home in May 1999. Two months later, Rogers moved back in.

A DFPS caseworker continued to visit the home regularly. On February 4, 2000, a caseworker came to the home to see S.C.R., but Rogers told the caseworker S.C.R. was not at home. Two days later, the caseworker returned. The mother had been ill, and S.C.R. was lying on her bed with a bandana around her head. When the caseworker felt the child's head, she discovered that it was "very soft." She called 9–1–1, and S.C.R. was admitted to the hospital in critical condition. She had a black eye, swollen head, lacerations and a possible bite mark on her face and lips, an acute burn to her forehead, bruising to her arms and legs, a fractured wrist, bleeding in her skull and brain, and hundreds of healed scars. The doctor noted that some of the injuries were remote, and some very recent. He further noted that the child would have reacted in pain if the recent injuries had been touched, and that the injuries were immediately visible.

Although the parents contended that S.C.R. had hurt herself when she fell out of a bunk bed, DFPS determined that both the mother and Rogers physically abused the child. S.C.R., L.A.J., and A.J.R. were removed from the home and placed with their respective foster parents, who had cared for them earlier. The agency obtained emergency temporary managing conservatorship of the youngest child, P.L.R., and placed her in the same foster home in which L.A.J. and A.J.R. were living. Both Rogers and his wife were convicted of the offense of injury to a child and are currently serving time in prison. DFPS's suit to terminate Rogers and his wife's parental rights to the four children resulted in a finding by the jury that termination was in the children's best interests. From that finding, Rogers appeals.

## Constitutional Rights

■ In his first issue, Rogers contends that the statute providing for the trial court to determine whether an appeal from a termination of parental rights is frivolous

2. At this time, P.L.R. was not yet born and S.C.R. was less than two weeks old.

is unconstitutional because it deprives him of a full appellate review. We decline to address this issue because this Court is, in fact, conducting a full appellate review of the termination proceedings, not a review of the trial court's determination that the appeal was frivolous. The issue is therefore moot; accordingly, we will not issue an advisory opinion. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993).

We do not reach the first issue.

### Jury Charge Error

■ In his second issue, Rogers contends the charge submitted to the jury was erroneous, resulting in an improper verdict. The State contends Rogers did not properly preserve this alleged error for review because he did not offer a substantially correct charge of his own[3] and because his objections on appeal do not comport with his objection at trial. At trial, Rogers objected to surplusage in the charge and contended that his version was a more correct one, without specifying his objections. On appeal, he argues that the charge did not conform to the pleadings and evidence because there was no evidence of many of the factors listed in regard to evaluation of the children's best interest. Assuming, without deciding, that Rogers preserved his challenges to the jury charge, he cannot prevail.

The jury charge submitted included the following instructions:

Some, but not all, factors to be considered in determining the "best interest" of the Child are:

1. the desires of the child;

2. the emotional and physical needs of the child now and in the future;

3. any emotional and physical danger to the child now and in the future;

4. the parenting ability of the individuals seeking custody;

5. the programs available to assist those individuals to promote the best interest of the child;

6. the plans for the child by those individuals seeking custody;

7. the stability of the home;

8. the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the acts or omissions of the parents;

10. the child's age and physical and mental vulnerabilities;

11. the frequency and nature of out-of-home placements;

12 the magnitude, frequency and circumstances of harm to the child;

13. whether the child has been the victim of repeated harm after the initial report and interview by the department or other agency;

14. whether the child is fearful of living in or returning to the child's home;

15. the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, or other family members, or others that have access to the child's home;

16. whether there is a history of abusive or assaultive conduct by the child's parent(s), family or others who have access to the child's home;

---

**3.** The record includes a charge that is different from the one actually submitted to the jury that has various written notations on it, such as "objection overruled," but, as DFPS notes, it is impossible to discern who prepared this proposed charge or whether it was formally tendered to the court.

17. whether there is a history of substance abuse by the child's parent(s), family or others who have access to the child's home;

18. whether the perpetrator(s) of the danger, harm or injury to the child is/are identified;

19. the willingness and ability of the child's parents, family or persons who have access to the child to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

20. the willingness and ability of the child's parents, family or persons who have access to the child to effect positive environmental and personal changes within a reasonable period of time;

21. whether the child's parents, family and/or persons who have access to the child demonstrate adequate parenting skills, including, but not limited to, providing the child and any other child under the family's care with:

    a. minimally adequate health and nutritional care;

    b. care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    c. guidance and supervision consistent with the child's safety;

    d. a safe and stable physical home environment;

    e. protection from repeated exposure to violence even though the violence many not be directed at the child;

    f. an understanding of the child's needs and capabilities;

22. whether an adequate social support system consisting of an extended family and friends is available to the child.

The first nine factors listed are taken verbatim from the seminal case of *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); the remaining factors are taken verbatim from section 263.307 of the Family Code ("Factors in Determining Best Interest of Child"). TEX. FAM.CODE ANN. § 263.307(b) (Vernon 2002). These factors are not, and are not intended to be, an exclusive or exhaustive list of factors the court or a jury may consider in determining a child's best interests, nor may all of them apply in every termination proceeding. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex.2002); *accord In re C.T.E.*, 95 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

■ We review jury charge error under an abuse-of-discretion standard, and a trial court abuses its discretion only when it acts without reference to any guiding principle. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Here, the criteria included in the court's charge accurately reflected the common law and statutory law, were intended to aid the jury in determining what was in the child's best interest, and could have resulted as readily in a finding favorable to the parent as in one that was not favorable to the parent. This is not an abuse of discretion. *See id.* (holding that because trial court tracked statutory language in instruction, trial court did not abuse discretion). Accordingly, we hold that there was no error in the jury charge simply because it included all of the factors enumerated in both *Holley* and in section 263.307(b) of the Family Code.

Rogers also contends that the jury charge instruction on endangerment was erroneous. He bases this argument not on the law, but rather on his contention that there was *no* evidence that he ever "engaged in any abusive, violent or aggressive conduct towards any child"; he argues

that the jury was permitted to base its finding on his omissions, not his actions.

To terminate a parent's rights to his child, the State must, in part, prove that the parent committed at least one act enumerated in the Family Code; one of those enumerated acts is conviction for injury to a child. *See* TEX. FAM.CODE ANN. § 161.001(1)(L)(ix) (Vernon 2002). Rogers' argument is thus fundamentally flawed because it is clear from the record that the jury based its findings on the fact that Rogers was convicted in a criminal proceeding of injuring his child—an affirmative act of abuse on his part, not an omission.

We hold there was no error in the jury charge.

We overrule the second issue.

### Admission of Entire DFPS Case File

In his third issue, Rogers contends the trial court erred in admitting the entire DFPS case file over his hearsay objection. We review a trial court's evidentiary rulings under an abuse of discretion standard. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998).

Properly authenticated records of regularly conducted business activity are admissible as an exception to the hearsay rule. TEX.R. EVID. 803(6); *In re N.C.M.,* 66 S.W.3d 417, 419 (Tex.App.-Tyler 2001, no pet.). The record shows that DFPS laid the proper predicate for admission of the file as a business record. Public records are also excepted from the hearsay exclusion if, as here, they set forth matters about which the observer has a legal duty to report and the observer is not a police officer or other law enforcement officer. TEX.R. EVID. 803(8)(B); *Bordman v. State,* 56 S.W.3d 63, 70–71 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Rogers contends that admission of the entire file was error, but offers no authority to support this contention; nor have we found any. However, we need not address this issue because Rogers did not preserve this complaint for appeal; accordingly we leave its resolution for another time.

Rogers' complaint on appeal, that no proper predicate was laid for admission of the file, does not comport with the general hearsay objection that he made at trial. A general hearsay objection does not preserve for appeal a challenge to a proper predicate's being made to admit business records. *See Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 281 (Tex. App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). We therefore decline to address the propriety of admitting the entire file.

We overrule the third issue.

### Testimony by DFPS Caseworker

In his fourth issue, Rogers contends the trial court erred in permitting the DFPS caseworker to testify about an earlier abuse investigation of Rogers and the children's mother. In his fifth issue, he contends the DFPS caseworker should not have been permitted to testify as an expert.

The record shows that the caseworker testified several times, without objection, concerning a 1995 accusation of abuse that had been made against Rogers. In addition, details regarding this earlier incident were contained in the properly admitted DFPS case file. Thus, the testimony about the earlier incident was cumulative of other evidence. As such, its admission was not erroneous. *See Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 561 (Tex.App.-Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (Tex.1998).

We overrule the fourth issue.

■ A person with specialized knowledge may testify about his or her own observations under Rule 701 of the Rules of Evidence and may also testify about the theories, facts, and data used in his or her area of expertise under Rule 702. TEX.R. EVID. 701, 702. A person who has professional social work training and experience, for example, can testify as both a lay and an expert witness. *See Harnett v. State,* 38 S.W.3d 650, 659 (Tex.App.-Austin 2000, pet. ref'd) (holding that social worker was permitted to testify under Rule 701 based on her personal observations of defendant and under Rule 702 based on her training and experience). Although the caseworker here was asked if she had formed an opinion about what was in the best interest of the children, she did not voice that opinion, contrary to Rogers's assertion that she expressed the "collective opinion" of the agency. As such, she was not testifying as an expert witness, despite being able to testify as an expert, but only as a fact witness.

We overrule the fifth issue.

## Testimony by Child Advocate Supervisor

■ In his sixth issue, Rogers contends the trial court erred in permitting the child advocate supervisor to testify. It is well settled that a guardian ad litem may testify regarding a child's best interest in a termination-of-parental-rights proceeding. *See* TEX. FAM.CODE ANN. § 107.002(d) (Vernon Supp.2004–2005) ("The court may compel the guardian ad litem to attend a trial or hearing and to testify as necessary for the proper disposition of the suit"). Therefore, because the child advocate supervisor here had been appointed as the children's guardian ad litem, her testimony was admissible. Even if it had not been admissible, Rogers did not preserve error because he did not object to this testimony at trial—only counsel for his co-defendant objected. *See* TEX.R.APP. P. 33.1 (requiring defendant to make timely objection to preserve error).

We overrule the sixth issue.

## Sufficiency of the Evidence

In his seventh issue, Rogers contends that the evidence was legally and factually insufficient to support termination of his parental rights.

### *Standards of Review*

■ In a legal-sufficiency review, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence exists to support the finding, the evidence is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

■ When a party attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof at trial, he must show on appeal that there is insufficient evidence to support the adverse finding. *Vongontard v. Tippit,* 137 S.W.3d 109, 112 (Tex.App.-Houston [1st Dist] 2004, no pet.). To conduct this review, we examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). We must uphold the finding unless the evidence that supports it is so weak as to be clearly wrong or manifestly unjust. *See Vongontard,* 137 S.W.3d at 112. The appellate court must also bear in mind that the established factual-sufficiency standard in

parental-rights termination cases is "clear and convincing" proof. *See In re M.S.*, 115 S.W.3d 534, 550 (Tex.2003).

### *Termination of Parental Rights*

■ DFPS sought to terminate Rogers's parental rights pursuant to section 161.001 of the Family Code. TEX. FAM. CODE ANN. § 161.001 (Vernon 2002). To terminate his parental rights under this section, DFPS was required to prove by clear and convincing evidence that (1) the parent committed at least one act enumerated in section 161.001(1), and (2) termination was in the child's best interest. *See id.* §§ 161.001(1),(2). One of the enumerated conditions is that the parent was convicted of injury to a child. *Id.* § 161.001(1)(L)(ix). Although Rogers contends that his criminal conviction cannot be used as evidence because it was on appeal at the time of trial, that is not an accurate reflection of the statute, which makes no reference to post-conviction proceedings. *See id.* (first prong satisfied if the parent has been adjudicated criminally responsible for the death or serious injury of child); *see also In re D.S.A.*, 113 S.W.3d 567, 574 (Tex.App.-Amarillo 2003, no pet.) (noting father's conviction for injury to child sufficient to establish statutory ground for termination). DFPS asks us to take judicial notice that Rogers' conviction for injuring S.C.R. was upheld on appeal, which we do; but that fact is not necessary to the disposition of this appeal. The fact that Rogers was convicted of injuring a child was, itself, clear and convincing evidence that Rogers had committed an enumerated act.

■ The evidence used to satisfy the first prong of the test may also be probative of the second prong, *i.e.,* the child's best interest. *In re C.H.*, 89 S.W.3d at 24. In evaluating whether termination is in a child's best interest, courts generally apply a set of non-exclusive *Holley* factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) any emotional or physical danger to the child now and in the future; (4) the parenting ability of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by those individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parents. *See Holley*, 544 S.W.2d at 372. Here, Rogers' conviction for injury to S.C.R. is very significant as to the third, fourth, and eighth *Holley* factors—physical danger to the child in the future, parental ability, and acts of the parent that indicate the parent-child relationship is not proper. In addition, the record shows that the children were fearful of Rogers, each was in a successful foster care placement, and the foster parents hoped to adopt the children. Rogers will be serving a lengthy prison sentence for injuring S.C.R., which is an additional factor indicating that termination is in the children's best interest. We conclude that these findings render the evidence legally sufficient to support termination.

It is not possible for this Court to contrast other evidence because there is not any. At trial, Rogers refused to answer most questions, repeatedly "taking the Fifth." Nor was there any conflicting evidence to indicate that termination was *not* in the best interest of the children. There are no psychological evaluations, school reports, or other evidence to indicate that the parent-child relationship was a healthy one and should not have been terminated.

Rather than relying on rebuttal evidence, Rogers centers his argument that

termination was not in the children's best interest around the issue of placement with his relatives. In both his second and seventh issues, Rogers complains that DFPS did not investigate any of his relatives' homes for possible placement of the children, and he suggests that termination of his parental rights was improper because of this failure to investigate. The record shows, however, that none of Rogers' relatives testified that they had sought to have the children placed in their homes.

 At each permanency hearing, the trial court evaluates the efforts of the agency to identify relatives who could provide the child with a safe environment if the child is not returned to a parent. *See* TEX. FAM.CODE ANN. § 263.404(a)(2) (Vernon 2002). However, Rogers provides no authority to suggest that there is either a statutory or a common-law duty imposed on DFPS to make such a placement or to investigate such a placement before a party's parental rights may be terminated. The authority that Rogers cites to support his argument that DFPS was required to investigate his relatives' homes in order to terminate his parental rights is simply not applicable to a situation in which the question of whether parental rights should be terminated is being determined.[4] The determination of where the child will be placed is a factor in evaluating the child's best interest, but it is not a bar to termination that placement plans are not final or that placement will be with non-relatives. *See In re C.H.*, 89 S.W.3d at 28 (noting that lack of evidence about definite plans cannot be dispositive factor because determinations regarding child's best interest would be subject to reversal on sole ground that adoptive family had yet to be found). We hold that the evidence was clearly and convincingly factually sufficient to sustain termination of Rogers's parental rights to A.J.R., L.A.J., S.C.R., and P.L.R.

We overrule the seventh issue.

We affirm the trial court's judgment.

---

4. Section 263.404(a)(2) applies only when the trial court issues a final order appointing the department as managing conservator *without* terminating parental rights. TEX. FAM.CODE ANN. § 263.404(a)(2) (Vernon 2002). Section 151.003 simply states that "[A] state agency may not adopt rules or policies or take any other action that violates the fundamental right and duty of a parent to direct the upbringing of the parent's child." TEX. FAM.CODE ANN. § 151.003 (Vernon 2002).