# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00155-CV

**Phill Raije Rian, Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT NO. 06-2032-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Phill Raije Rian appeals the judgment terminating her parental rights to her two children. She challenges the admission of evidence concerning convictions that are on appeal and contends that the evidence is insufficient to support the findings that her parental rights should be terminated and that termination is in the children's best interest. She also contends that the Department should not be the children's sole managing conservator. We affirm.

This case concerns Rian's parental rights to C.R., a boy born in March 2002, and G.R., a girl born in December 2003.[1] Rian was forty-two years old at the time of trial in February 2008. The children were removed from Rian's home after she was arrested for sexually assaulting a sixteen-year-old neighbor boy. Rian was diagnosed as bipolar, and the children were

---

[1] The parental rights of the children's father, Tim Nagel, were also terminated at this trial. He did not appeal that determination.

diagnosed with some developmental delays. Rian was often late for the visits with the children and refused to undergo a sex-offender evaluation because it might compromise her criminal defense by requiring her to admit conduct she denied committing. In this case, the jury found and the court agreed that clear and convincing evidence showed that Rian satisfied several bases for termination, including that she knowingly engaged in criminal conduct that resulted in her conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See* Tex. Fam. Code Ann. § 161.001(1)(Q) (West 2008). The jury found and the court agreed that clear and convincing evidence showed that termination of Rian's parental rights was in the children's best interest. *See id*. § 161.001(2). The court terminated Rian's parental rights and appointed the Department the children's managing conservator.

Rian argues that the court erred by admitting evidence that she had been convicted of sexual assault of a child. She argues that the findings that her behavior satisfies one or more grounds for termination is not supported by legally or factually sufficient evidence. She argues that the finding that termination of her parental rights is in the children's best interest is not supported by factually sufficient evidence. She contends that, if this Court reverses the termination finding, it should also reverse the appointment of the Department as the children's managing conservator.

Rian contends that the evidence of her convictions was inadmissible as a matter of law because they were being appealed and therefore were not final, citing Tex. R. Evid. 609, 803(22); *see also J.A. v. Dallas County Child Welfare*, 726 S.W.2d 241, 245 (Tex. App.—Dallas 1987, no writ). She contends that family code provisions permitting termination based on

2

"convictions" can be harmonized with the rules by reading the finality requirement into the statutes, thus permitting termination based on convictions for which the appeals have been exhausted.

The specified rules of evidence do not apply to this particular use of evidence. Although the language in both rules is unequivocal,[2] Rule 609 pertains to impeachment by evidence of conviction of a crime, while Rule 803 pertains to exceptions to the hearsay rule to which the availability of the declarant is immaterial. *See* Tex. R. Evid. 609, 803(22). Here, the evidence is not being used to impeach Rian but to show that her parental rights should be terminated. She does not argue that the evidence is inadmissible hearsay, but that it was inadmissible because the convictions are not final because they are still on appeal. We are not persuaded that an exception to an exception to an exclusionary rule—particularly when not invoked by the parties or the facts—has the effect of importing the word "final" into the statute defining the elements that must be proven to support termination of parental rights based on a parent's criminal conviction.

The legislature did not include the finality requirement in section 161.001 when deciding that certain criminal convictions committed under particular circumstances would support termination of parental rights. *Rogers v. Department of Family and Prot. Servs.*, 175 S.W.3d 370, 378 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (interpreting subsection (L)). Statutes can supersede exclusionary rules of evidence without specifically stating that fact. *See Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.) (holding that Tex. Code Crim. Proc. Ann. art. 38.37 concerning cases of sexual abuse of children supersedes rules of evidence

---

[2] Texas Rule of Evidence 609(e) provides, "Pendency of an appeal renders evidence of a conviction inadmissible." Texas Rule of Evidence Rule 803(22) provides, "In all cases, the pendency of an appeal renders such evidence inadmissible."

deeming inadmissible evidence of other crimes, acts, or wrongs involving the child).  Rian's proposed requirement that convictions be final and unappealable to be admissible in termination cases is irreconcilable with the statutory provision that allows termination upon proof that the parent has been convicted or placed on probation, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under several penal provisions including those defining sexual assault.  *See* Tex. Fam. Code Ann. § 161.001(1)(L).  Because deferred adjudication is, by its nature, not a conviction, the statute plainly contemplates that a final conviction is not required for termination under subsection L.  *See id.* Subsection Q similarly permits termination after "conviction" with no express requirement of finality of conviction, provided that the conviction resulted in imprisonment and an inability to care for the child for not less than two years from the date of the filing of the petition.  *Id*. § 161.001(1)(Q). We conclude that the legislature intended to permit termination under section 161.001 based on conviction without regard to whether appeals were exhausted.  We are not persuaded that the legislature statutorily defined the elements supporting termination to include criminal conviction—or mere deferred adjudication—but intended that courts nevertheless exclude evidence of those elements under the rules of evidence because the appellate process is ongoing.

The strict time requirements for prosecuting termination cases to finality, *see id*. § 263.401, add contextual weight to the view that the legislature intended non-final convictions to be admissible in termination cases.  It is probable that criminal prosecutions and terminations based on the same behaviors will proceed in parallel, that evidence of the trial court's resolution of the criminal proceeding will be useful to the court considering the termination proceeding, and that the

4

time constraints will mean that the termination proceeding will often occur before appeals in the criminal proceeding are exhausted. We conclude that appeals of criminal convictions need not be exhausted before evidence of those convictions is admissible in parental rights termination cases.

An individual's parental rights may be terminated only if the State proves and the trial court finds by clear and convincing evidence that (1) the parent engaged in conduct constituting at least one of the statutory termination grounds enumerated in section 161.001(1) of the family code; and (2) termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001; *Taylor v. Texas Dep't of Prot. & Regulatory Servs.*, 160 S.W.3d 641, 646 (Tex. App.—Austin 2005, pet. denied). Some of the common factors that courts use to evaluate the best interests of a child in a given case are: (1) the emotional and physical needs of the child now and in the future; (2) any emotional and physical danger to the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the programs available to assist those individuals to promote the best interest of the child; (5) the plans for the child by those individuals or by the agency seeking custody; (6) the stability of the home or proposed placement; (7) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This is not an exhaustive list and other factors also may be considered where appropriate. *Id*.

The standard of review for challenges to the sufficiency of the evidence is somewhat heightened because of the heightened standard of proof at trial. "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief

or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *see In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

When assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *Id*. We disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible, but we need not disregard all evidence that does not support the finding. *Id*. Disregarding undisputed facts that do not support the finding could skew our analysis of whether there is clear and convincing evidence. *Id*. Therefore, in conducting a legal sufficiency review in a termination of parental rights case, we must consider all of the evidence, not just that which favors the verdict. *See City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

In determining a factual sufficiency challenge, the higher burden of proof in termination cases also alters the appellate standard of review. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id*. at 25. In considering whether evidence rises to the level of being clear and convincing, we must consider whether the evidence is sufficiently reasonable to form in the mind of the fact-finder a firm belief or conviction as to the truth of the allegation sought to be established. *Id*. We consider whether disputed evidence is such that a reasonable fact-finder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence

6

that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

The sufficiency of the evidence of most of the elements of subsection Q is not disputed. *See* Tex. Fam. Code Ann. § 161.001(1)(Q). Although Rian argues that evidence of her conviction was inadmissible, she does not dispute that she was convicted of sexual assault of a child and sentenced to more than two years in prison. We have concluded that there is no requirement that the appellate process be exhausted before subsection Q can provide grounds on which to terminate parental rights. Thus, the remaining issue on this element is whether Rian will be unable to care for the child for more than two years while imprisoned. Incarceration alone does not justify termination because an inmate may provide adequate care by arranging for care to be provided by another. *In re Caballero*, 53 S.W.3d 391, 395-96 (Tex. App.—Amarillo 2001, pet. denied).

Clear and convincing evidence supports the view that Rian will be unable to provide adequate care for the children. Rian presents Carla Sepulveda as her preferred caregiver. Sepulveda and Rian became friends while they were living in the same hotel in California. While Sepulveda said she was willing to care for Rian's children, ample evidence supported the view that she would not be able to do so adequately. She testified that she was the mother of three children, estranged from her husband since he fathered a child by another woman, and residing in California as a legal alien on a permit that could be revoked if she divorced her husband. She testified that she received $1,200 per month in child support, an amount fully absorbed by her apartment rent. She

worked overnight at a hotel two times a week. The most telling exchange was the following during direct examination by Rian's attorney:

Q. Could you afford to take care of your three and her two children?

A. No.

Q. Right now you could not do that?

A. Economically, no.

Although Sepulveda said she would accept financial assistance from any source to care for Rian's children, she had not explored any options. She had not made plans to continue the therapy for the children, nor had she investigated medical insurance for the children. Although Sepulveda testified that she liked the children and wanted to help them, there was little evidence that she could provide adequate care for them while Rian was in prison. Rian did not present any evidence that she would be able to provide financially for the children while in prison, and does not present any other options for placement. Her brother said he would consider taking the children, but only after Rian's rights were terminated. Legally and factually sufficient evidence supports the jury's finding that the elements of subsection Q were established by clear and convincing evidence.

We next examine whether factually sufficient evidence supports the finding that termination is in the children's best interest. There was undisputed evidence that Rian loved her children. They were clean and physically healthy. After removal, they enjoyed their visits with her, although her tardiness tended to agitate them. However, Rian is scheduled to be in prison for twenty-three years and made no practical plan for the children's care during her incarceration. Their

8

father is incarcerated and not involved in their daily care. The neighbors who voluntarily took the children when Rian was first jailed relinquished custody shortly thereafter because of disagreements with Rian's directives regarding how the children should be treated.[3] Rian's family declined to take the children, although her brother expressed interest on the condition that Rian's rights be terminated first. Rian's choice, Sepulveda, was eager to help, but unable to do so financially. There is no evidence that Rian could adequately provide for the emotional and physical needs of her children while in prison. There was evidence that Rian's untreated bipolar disorder caused some of the instability in and inappropriate aspects of the children's environment, such as the abrupt move to Texas from California, her belief that long hair and a speech impediment were cute and would enhance her son's acting and modeling career, her creation of a "Chuck E. Cheese"-like environment in their home for the entertainment of an estimated forty-two neighborhood children to whom Rian asserted they had become very close in their ten months in residence, and Rian's emotional and sexual involvement[4] with the sixteen-year-old neighbor boy that reportedly included plans for the boy to seek emancipation, to marry her, and to move with her and the children to California in order to run a business that Rian would buy. There was evidence raising some concern about the children's development in Rian's care. For example, the four-year-old was

---

[3] For instance, Department witnesses testified that the four-year-old boy pleaded with the neighbors to cut his hair because he was being ridiculed for its length, but Rian rejected that request because the child was her "moneymaker" through an as-yet unrealized acting and modeling career. Rian also testified that her son liked his hair long because it was an L.A. style.

[4] Despite having been convicted in a criminal proceeding for sexually assaulting the boy, based in part on statements she gave to police, at this trial, Rian denied having sexual contact with him.

still wearing diapers,[5] drinking baby formula from a bottle and eating baby food, and speaking unintelligibly because of a deliberately untreated speech impediment,[6] and both children were diagnosed with emotional disturbance and developmental delays attributed to their upbringing. There was evidence that, while in foster care, the children were closing their developmental gaps and that children tend to do better with a stable environment. Rian's lack of effective planning for the children's care during her incarceration provides strong evidence that the children's best interest would be better served by terminating her parental rights. The Department's plan for adoption comparatively better serves their interests. We conclude that factually sufficient evidence supports the finding that there is clear and convincing evidence that termination of Rian's parental rights is in the children's best interest.

Because we have concluded that termination is supported by legally and factually sufficient evidence pertaining to Rian's inability to care for her children for more than two years while imprisoned, we need not consider other grounds for termination. Because we have concluded that termination is supported by sufficient evidence, we need not evaluate Rian's alternative issue concerning the appointment of the Department as managing conservator of the children.

---

[5] Rian asserted that the boy wore pull-up diapers at night and, when she went to be questioned by law enforcement and the children came along, he wore a pull-up because of the uncertain amount of time they would be away from home.

[6] Rian asserted that the child could speak normally and chose to affect an impediment because people thought it was cute. The impediment's persistence through months of therapy undercuts her assertion.

10

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring Opinion by Justice Patterson

Affirmed

Filed:   July 31, 2009

11