

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00514-CV

IN THE INTEREST OF Y.V., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Following a bench trial, the trial court signed an order terminating appellants Father's and Mother's parental rights to their daughter, Y.V., and appointing the Texas Department of Family and Protective Services (Department) as Y.V.'s permanent managing conservator. In his sole issue, Father argues that the trial court erred by appointing the Department as Y.V.'s

---

[1]See Tex. R. App. P. 47.4.

managing conservator. In her sole issue, Mother argues that termination of her parental rights to Y.V. was not in Y.V.'s best interest. We will affirm.

## II. BACKGROUND

On July 29, 2011, an ambulance drove Y.V., who at the time was nine months old, to Cook Children's Medical Center after she reportedly fell off of Mother's bed. The Medical Center's doctors determined that Y.V. had a subdural hematoma, a skull fracture, and retinal hemorrhaging. According to doctors, the injuries could not have been the result of an accident or fall; rather, the diagnosis was that Y.V. had either been shaken severely, or she had been shaken severely as her head impacted a hard surface, causing the injuries. After an investigation revealed that the only people who had been with Y.V. the day she was taken to the hospital were Mother, Father, and a sibling, coupled with evidence indicating that Mother had physically abused Y.V., the Department placed Y.V. in foster care on August 9, 2011. The Department then sought the termination of Mother's and Father's parental rights. At the conclusion of trial on September 5, 2012, Y.V. remained in foster care.

During the trial proceedings, both Mother and Father requested that the trial court appoint Y.V.'s paternal aunts as Y.V.'s possessory managing conservators. After hearing testimony by the Department's witnesses, Y.V.'s doctor, Mother, and Father, the trial court entered an order terminating Mother's and Father's parental rights to Y.V. In the order, the trial court determined that Mother and Father had knowingly placed or knowingly allowed Y.V. to remain in

2

conditions or surroundings that endangered Y.V.'s physical and emotional well-being; that Mother and Father had engaged in conduct or knowingly placed Y.V. with persons who engaged in conduct that endangered Y.V.'s physical or emotional well-being; that Mother and Father both failed to comply with the provisions of a court order that specifically established the actions necessary for both to obtain the return of Y.V.; and that termination of Mother's and Father's parental rights were in Y.V.'s best interest. The trial court also appointed the Department as Y.V.'s permanent managing conservator. This appeal followed.

## III. DISCUSSION

### A. Father Lacks Standing to Challenge Conservatorship

In his sole issue, Father argues that there "was no evidence or insufficient evidence to support" the trial court's appointing the Department as Y.V.'s managing conservator. But because Father did not appeal the trial court's findings terminating his parental relationship to Y.V., he is bound by those findings. Father has thus become a former parent with no legal rights with respect to Y.V. *See* Tex. Fam. Code Ann. § 161.206(b) (West 2008) ("[A]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides.").

Having no legal rights with respect to Y.V., Father lacks standing to attack the portion of the termination order appointing the Department as permanent managing conservator of Y.V. *See In re H.M.M.*, 230 S.W.3d 204, 204–05 (Tex.

3

App.—Houston [14th Dist.] 2006, no pet.) (holding that former mother did not have standing to appeal post-termination custody decision when she did not appeal the termination of her parental rights); *see also In re R.A.*, No. 07-08-0084-CV, 2009 WL 77853, at \*2 (Tex. App.—Amarillo Jan. 13, 2009, no pet.) (mem. op.); *In re S.M.C.*, No. 07-04-0429-CV, 2005 WL 441538, at \*1 (Tex. App.—Amarillo Feb. 25, 2005, no pet.) (mem. op.).  We overrule Father's sole issue.

### B.  The Trial Court's Best Interest Finding as to Mother

In her sole issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her rights to Y.V. is in Y.V.'s best interest.  See Tex. Fam. Code Ann. § 161.001. (West Supp. 2012).  We disagree.

### 1.  Standard of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit.  Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures."  *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92, (1982)).  We strictly scrutinize termination proceedings and strictly construe

4

involuntary termination statutes in favor of the parent. *Id.*; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001 (West Supp. 2012), .206(a) (West 2008). Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d at 554 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and conservatorship). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the verdict with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). If, in light

6

of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

### 2. Evidence Supports the Trial Court's Best Interest Finding

Here, Mother does not challenge the trial court's findings regarding any of the enumerated reasons for termination that are listed under subsection (1) of the statute; rather, Mother challenges only that termination of her parental rights is in the best interest of Y.V. *See* Tex. Fam. Code Ann. § 161.001.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *Id.*  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*

Concerning the present and future emotional and physical needs and dangers to Y.V., the record indicates that the Department initiated this case following an investigation that began after Y.V. was presented at the hospital with a subdural hematoma, a right frontal skull fracture, and retinal hemorrhages. Y.V.'s doctor testified that the injuries were caused intentionally and not, as repeatedly explained by Mother throughout the investigation and trial, the result of an accidental fall from a bed.  Her primary doctor testified that she was concerned that Y.V. could be re-injured if returned to the caregivers she had prior to going to the hospital—Mother and Father.  There is also evidence that Y.V.'s injuries were caused by more than one episode of Y.V. having been shaken

8

severely, or shaken severely to the point that her head impacted something hard, causing visible abrasions on her forehead as well as the skull fracture.

Y.V.'s injuries could cause life-long complications. Doctors testified that Y.V. has seizures and weakness on the right side of her body due to the injuries she sustained prior to being brought to the hospital. At the time of trial, Y.V. remained on seizure medication, and she was continuing occupational and speech therapy. Y.V.'s long-term prognosis is that doctors expect Y.V. to have some type of deficit. And although the hope is that Y.V. can eventually stop taking seizure medications, doctors believe that Y.V. will always have some level of seizure activity in her brain. In the future, Y.V. will need weekly occupational and speech therapy, and she will also need to see a neurologist annually. Due to her medical needs, Y.V., presently and in the future, needs a caregiver who understands when to take her to the doctor and when to ask questions of medical staff.

But despite these injuries to Y.V. and her present and future medical needs, there is strong evidence that Mother denies that Y.V. ever has been in an environment that is dangerous to her physical health. Mother insisted throughout the investigation and at trial that Y.V.'s injuries were the result of her falling from the bed to the floor. She testified that she did not think anyone had hurt Y.V. And she also alleged that Y.V.'s seizures and throwing up were due to hospital medical staff, and not due to injury. Evidence presented at trial indicates Mother not only denies Y.V.'s needs but that Mother has never contacted Y.V.'s doctors

to gather information about providing the proper care for Y.V. Even after hearing the doctor's testimony at trial, Mother testified that she did not know what a hematoma or a skull fracture were, and there is evidence in the record that Mother cannot recognize the symptoms of a seizure.

There is also evidence in the record that acts and omissions by Mother indicate that the existing parent-child relationship with Y.V. is not a proper one. In addition to denying that Y.V. was injured or that her symptoms were the result of injury, Mother testified at trial that she is in the United States illegally and that she drives every day despite not having a driver's license. Furthermore, evidence at trial indicates that Mother has a history of denying injury to her children, and that she has fled the country to Mexico to avoid the Department's involvement with another of her children and alleged sexual abuse by Father. Mother testified that she has allowed her other children to live with unconventional freedoms that might hinder proper emotional development. Notably, one of Mother's other daughters left home to live with her boyfriend in Mexico when the daughter was only fifteen years old. Another of Mother's daughters became pregnant with her first child at sixteen, moved in with her twenty-year-old boyfriend when she was only seventeen, and was pregnant with her second child at seventeen.

Finally, we look to the evidence concerning the stability of the home or proposed placement of Y.V. As a threshold matter, we address Mother's claim that the trial court erred by not placing Y.V. with her paternal aunts. Both Mother

10

and the Department spent copious amounts of briefing dedicated to whether the trial court erred by not placing Y.V. with Mother's proposed placement.  It should be noted that it appears that Mother does not seek custody of Y.V.  It seems that she is simply arguing that suitable family members are available to care for Y.V.; that she believes the trial court should have placed Y.V. with the aunts; and that, thus, it was not in Y.V.'s best interest that her own parental rights to Y.V. be terminated.  Mother provides no authority to suggest that this issue is relevant to the question of whether it was in Y.V.'s best interest that Mother's parental rights be terminated.[2]  *See Rogers v. Dep't of Family & Protective Servs.*, 175 S.W.3d 370, 379 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (reasoning that there exists no statutory or common-law duty for placement with a relative before a trial court can determine that termination of parental rights is in the best interest of the child).  The determination of where a child will be placed is a factor in determining the child's best interest, but the fact that placement will be with non-relatives is not a bar to termination.  *Id.*; *see also In re A.L.*, 389 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.] 2012), ("[Appellant] provides no authority to suggest that [appellant's proposed placement with relatives] is relevant to the question of whether her parental rights should have been terminated.").

---

[2]At a permanency hearing, the trial court must evaluate the efforts of the Department to identify relatives who could provide the child with a safe environment if the child is not returned to a parent.  *See* Tex. Fam. Code Ann. § 263.404(a)(2) (West 2008).  But this rule applies only when the trial court issues a final order appointing the Department as managing conservator *without* terminating parental rights.  *Id.*

Y.V.'s current placement supports the trial court's judgment. In contrast to the environment that Y.V. lived in where she was injured to the point of needing treatment for seizures and developmental delay, and where Mother denies both the cause and symptoms that Y.V. suffers, the record indicates that at the time of trial, the Department had placed Y.V. in an adoption-motivated foster home, and that she had lived there for more than a year. The record indicates that Y.V. had adjusted to the foster home and was doing very well. The foster mother is a nurse, and the foster parents have the ability to provide for Y.V.'s special needs. And the record indicates that the foster parents take advantage of programs available to them to assist in raising Y.V. given her special needs—the foster parents have attended seizure training at Cook Children's Medical Center.

We conclude and hold that the evidence in this case is such that the trial court could have reasonably formed a firm belief or conviction that termination of the parent-child relationship between Mother and Y.V. is in the best interest of Y.V., and that the evidence is legally sufficient to support that finding. *In re J.P.B.*, 180 S.W.3d at 573. Furthermore, we conclude and hold that the disputed evidence that the trial court could not have credited in favor of terminating the parent-child relationship between Mother and Y.V. is not so significant that the trial court could not reasonably have formed a firm belief or conviction in the truth of this finding; thus, the evidence is factually sufficient to support the trial court's best-interest finding. *In re C.H.*, 89 S.W.3d at 28. We overrule Mother's sole issue on appeal.

## IV. Conclusion

Having overruled Father's sole issue on appeal and having overruled Mother's sole issue on appeal, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  June 13, 2013