# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00655-CV

**M. U., N. T., and E. T., Appellants**

**v.**

**The Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. 12-0824, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree, based on jury findings, terminating a mother

and father's parental rights to two children, ending the managing conservatorship of the children's

maternal grandparents, and awarding sole managing conservatorship to the Texas Department

of Family and Protective Services (Department). The mother (M.U.) and the maternal grandparents,

(N.T. and E.T.) perfected appeals from the decree, the former through appointed counsel, the

latter pro se. However, since filing their notice of appeal, the grandparents have not filed a brief,

responded to an overdue-brief notice from this Court, or communicated with this Court in any way.

Emphasizing the grandparents' inaction, the Department has filed a motion to dismiss their appeal

for want of prosecution, to which the grandparents, once again, have not responded. On this record,

we are compelled to grant the Department's motion and dismiss the appeal of N.T. and E.T. for want of prosecution.[1]

The prosecution of M.U.'s appeal has similarly lagged, notwithstanding the appointment of counsel to assist her. After appointed counsel—Luis I. Cuellar—failed to file a brief by the original deadline of November 27, 2013, we issued an order compelling him to file the brief by December 27, 2013.[2] Cuellar missed that deadline, too, prompting this Court—as is our necessity-driven practice in these super-accelerated parental-termination appeals[3]—to issue a show-cause order requiring Cuellar to appear before us on January 15, 2014, to explain why he should not

---

[1] *See* Tex. R. App. P. 42.3(b); *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

[2] *See M. U. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00655-CV (Tex. App.—Austin Dec. 10, 2013, order) (per curiam).

[3] Under the Texas Supreme Court's recently promulgated time standards in parental-termination cases, this Court has only 180 days following the filing of the notice of appeal to issue its opinion and judgment. *See* Tex. R. Jud. Admin. 6.2(a). Often a significant portion of that time will elapse while we await the preparation of the appellate record, which can be quite voluminous. Consequently, if we are to have a meaningful opportunity to analyze the parties' contentions and draft our opinion and judgment, we have extraordinarily little leeway to grant parties extensions of briefing deadlines. Our current practices are calculated to ensure us that opportunity while also complying with the Texas Supreme Court's time standards—which, let us all remember, have the goal of providing the affected children with an expedited decision that ensures them stability and finality. *See In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003) (explaining that termination cases are to be decided expeditiously "[t]o ensure that children's lives are not kept in limbo while judicial processes crawl forward" and observing that, "[i]n termination cases, judicial economy is not just a policy—it is a statutory mandate"); *see also Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513-14 (1982) ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged.").

2

be held in contempt and have sanctions imposed for his failure to obey our earlier order.[4]  (This, incidentally, is not the first instance in which this Court has been down this unfortunate road with Mr. Cuellar in recent months.)[5]  However, because the ultimate point of these procedures is to secure the briefing so we can get to work on deciding the merits and writing an opinion within the tight deadlines,[6] our order provided that Cuellar would be relieved of his obligation to appear if he filed his brief by January 14, 2014.  On January 14, at 11:59 p.m.—literally seconds before the midnight deadline—Cueller e-filed what purported to be his brief on behalf of M.U.

Cuellar's "brief" is in a state that would ordinarily cause us to strike it as woefully noncompliant with the requirements of the Texas Rules of Appellate Procedure—among the more glaring defects, it is entirely lacking in citations to authority or to the record and contains no

---

[4] *See M. U. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00655-CV (Tex. App.—Austin Jan. 3, 2014, order) (per curiam).

[5] In cause number 03-12-00487-CV, another parental-termination appeal in which Cuellar was appointed counsel, he ended up eliciting two rounds of show-cause orders.  As in the present case, Cuellar missed the briefing deadline, then an extended deadline ordered by the Court, prompting this Court to issue a show-cause order.  As with the present order, our show-cause order provided that Cuellar would be let off the hook if he would file his brief sometime before the date of the hearing. *See J. M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00487-CV (Tex. App.—Austin Oct. 4, 2012, order) (per curiam).  Cuellar finally filed his brief on the day before the hearing, albeit one lacking his signature. *Cf.* Tex. R. App. P. 9.1(a) ("If a party is represented by counsel, a document filed on that party's behalf must be signed by at least one of the party's attorneys.").  Notwithstanding the defect, we accepted the brief, moved ahead with deciding the merits, but the Clerk of the Court sent Cuellar notice of the defect and that he should file an amended brief with the required signature.  There followed further unresponsiveness from Cuellar and another show-cause order just to get him finally to file a signed version of his brief. *See J. M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00487-CV (Tex. App.—Austin Nov. 15, 2012, order) (per curiam).

[6] *See supra* note 3.

3

component that purports to be the "argument"[7] (although there is a two-paragraph section titled "*Summary of* the Argument" that immediately precedes the "Prayer"). However, within a preceding section titled "Course of Proceedings," Cuellar does present what we can discern to be some substantive assertions that inform the meaning of the "Summary of Argument" that follows. Rather than risking further delays that might ensue were we to strike this filing for noncompliance with the appellate rules, we have proceeded to decide the appeal on the briefing we have been given. We would strongly suggest, however, that in any future parental-termination appeals to which he is appointed, Mr. Cuellar should perform with a level of diligence and professionalism more befitting counsel defending what has aptly been termed a "precious," "essential," and "basic civil right of man."[8] It also occurs to us that the trial courts who appoint counsel in Hays County parental-termination cases (and who presumably will read this) might be in a position to offer Mr. Cuellar further encouragement in this regard.

Turning now to the real business at hand, we discern that two basic arguments have been presented on M.U.'s behalf. First, it is asserted that the jury charge was "inadequate" and "confusing," in that the jurors were instructed that "they not to [sic] answer 5 if they answered 'yes' to questions 1-4." Questions 1-4 consisted of two sets of standard broad-form questions submitting the ultimate termination issue (i.e., with instructions regarding applicable alternative statutory termination grounds, plus "best interest") as to each of the two parents, with respect to each of the two children. Question 5 submitted the issue of conservatorship as to one of the two children,

---

[7] *Cf. generally* Tex. R. App. P. 38.1.

[8] *See Stanley v. Illinois*, 405 U.S. 645, 651 (1976); *In re G. M.*, 596 S.W.2d 846, 846 (Tex. 1980).

asking the jury to decide as between the grandparents (the then-current managing conservators), the two parents, and the Department, but also instructing that the jury should not consider a parent if it had found in the affirmative as to that parent on the termination issue concerning that child. (Incidentally, Question 6 is a counterpart to Question 5 regarding the second child, yet there appears to be no explicit complaint about it.) As Question 5 correctly reflects, a parent whose parental rights have been terminated as to a child would not have standing to be named managing conservator.[9] We find no reversible error in the charge.[10]

The second complaint advanced on M.U.'s behalf is that the district court abused its discretion by failing to dismiss the termination suit pursuant to section 263.401 of the family code, which provides in relevant part:

(a)     Unless the court has commenced the trial on the merits or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination

[9] *See* Tex. Fam. Code § 102.006(a)(1).

[10] *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 648-49 (Tex. 1990) ("The charge in parental rights cases should be the same as in other civil cases. . . . The standard for review of the charge is abuse of discretion, and abuse of discretion occurs only when the trial court acts without reference to any guiding principle."); *Rogers v. Department of Family & Protective Servs.*, 175 S.W.3d 370, 375-76 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (applying abuse-of discretion standard to claim of charge error in parental-termination case); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) ("When determining whether a particular question could have confused or misled the jury, we 'consider its probable effect on the minds of the jury in the light of the charge as a whole.'" (quoting *Texas Emp'rs Ins. Ass'n v. McKay*, 210 S.W.2d 147, 149 (Tex. 1948)); *Patlyek v. Brittain*, 149 S.W.3d 781, 789 (Tex. App.—Austin 2004, pet. denied) ("Even if [charge] error exists, the appellant must show that considering the totality of the circumstances the error amounted to such a denial of rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.").

5

of the parent-child relationship or requests that the department be named conservator of the child.

(b)     Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).[11]

Rather than granting M.U.'s motion to dismiss the suit pursuant to subsection (a), the district court extended the dismissal date pursuant to subsection (b).

"Because an extension of the dismissal date is similar to a continuance and because section 263.401(b) does not indicate which appellate standard of review to apply, we apply the abuse of discretion standard."[12] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[13] "Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred."[14]

---

[11] Tex. Fam. Code § 263.401.

[12] *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied).

[13] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *D.W.*, 249 S.W.3d at 647.

[14] *D.W.*, 249 S.W.3d at 647.

6

Here, in its order granting the extension, the district court expressly found that extraordinary circumstances necessitated the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator was in the best interest of the child. Although the district court did not explicitly state in its order what, specifically, those extraordinary circumstances were, there is no statutory requirement that the district court do so.[15] Rather, to render an order that complies with section 263.401(b), the trial court is required to schedule a new date for dismissal of the suit, make further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit, and set a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit.[16]

Furthermore, the district court made findings of fact and conclusions of law related to the extension, including the following:

> In a prior final order, [E. T. and N. T.], maternal grandparents, had been appointed the joint managing conservators of the child [T. U.] They had been timely served in this case. Jacqueline Wood became the attorney of record for the maternal grandparents on April 23, 2013, less than a week before the second trial setting.
>
> Ms. Wood filed special exceptions and a motion for continuance.
>
> Counsel for respondent mother did not timely object to the hearing scheduled by Ms. Wood.

---

[15] *See In re J.G.K.*, No. 02-10-00188-CV, 2011 Tex. App. LEXIS 4836, at *105-08 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op.); *In re A.T.S.*, No. 12-07-00196-CV, 2008 Tex. App. LEXIS 5721, at *47-48 (Tex. App.—Texarkana July 31, 2008, no pet.) (mem. op.). The district court did, however, enter findings of fact, some or all of which, the district court could have impliedly found, constituted extraordinary circumstances.

[16] *See* Tex. Fam. Code § 263.401(b).

7

Counsel for respondent mother opposed a trial amendment by the Department that would cure the pleading defects alleged by Ms. Wood.

Counsel for respondent agreed with Ms. Wood that the Department's pleadings were inadequate.

The dismissal date in the case was April 29, 2013, the date the jury trial was scheduled to begin. Granting a motion to dismiss without extending the dismissal date would have had the effect of dismissing the Department's case without regard to its merits.

The guardian ad litem originally supported reunification, but as of April 24, 2013, supported termination of parental rights.

By the time of the first trial Respondent mother hadn't completed all of her services to get her children back.

It would be a danger to return the children to the parents at the time of the April 24, 2013 [extension] hearing.

At the time of the first trial setting, Respondent mother had not re-engaged in therapy. At the time of the second trial setting (April 29, 2013), Respondent mother had re-engaged in therapy, but had not been discharged.

At the time of the first trial setting, Respondent mother had not enrolled in an intensive outpatient program for alcohol. At the time of the second trial setting (April 29, 2013), Respondent mother had enrolled in an inpatient program, but had not been discharged.

There does not appear to be any challenge on M.U.'s behalf to the evidentiary support for these findings, and to the extent one is intended, it is not viable because no reporter's record was brought forward from the hearing at which the extension was granted. We cannot conclude on this record that granting an extension based on the above circumstances constitutes an abuse of discretion.[17]

_____

[17] *See In re T.T.F.*, 331 S.W.3d 461, 475-76 (Tex. App.—Fort Worth 2010, no pet.) (explaining abuse-of-discretion standard in context of section 263.401 extensions and concluding that appellant failed to demonstrate that trial court abused its discretion in granting extension); *D.W.*,

We affirm the district court's termination decree.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   March 13, 2014

---

249 S.W.3d at 647-48 (concluding that, because no record was made of extension hearing, "we must presume that the evidence supported the trial court's ruling" and that ruling did not constitute abuse of discretion).