Opinion issued February 11, 2010






 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00539-CV

____________


JANELL S. MARIN, Appellant


V.


IESI TX CORPORATION, Appellee






On Appeal from the 412th Judicial District Court

Brazoria County, Texas

Trial Court Cause No. 33146






OPINION ON REHEARING

 Appellant, Janell S. Marin, has filed a motion for rehearing and for en banc
reconsideration of our opinion issued on October 15, 2009. We withdraw our opinion
and judgment of October 15, 2009 and substitute this opinion and judgment in their
place. Because we issue a new opinion in connection with the denial of rehearing,
Marin's motion for en banc reconsideration of our prior opinion is moot. 
Richardson-Eagle, Inc. v. William M. Mercer, Inc., 213 S.W.3d 469, 472 (Tex.
App.--Houston [1 Dist.] 2006, pet. denied).

 Marin appeals from a judgment in favor of appellee, IESI TX Corporation
("IESI"). The judgment was rendered in accordance with the jury's findings that
Marin committed forgery, misapplication of fiduciary property, fraud, and conversion. 
In nine issues, Marin challenges the trial court's admission of evidence, the legal and
factual sufficiency of the evidence, and the award of exemplary damages. We
conclude that the trial court did not err in the admission of the evidence, that the
evidence is legally and factually sufficient, and that the trial court properly awarded
exemplary damages. We affirm. Background IESI is a waste management company based in Fort Worth, Texas. IESI
purchased Envirotex, Inc. ("Envirotex") in December 1998. Marin was the president
and a co-owner of Envirotex. After the purchase, Envirotex became IESI's Alvin
Division and Marin was hired as the Alvin Division manager. IESI also gave Marin
accounting and financial responsibilities for the Alvin Division because she was a
certified public accountant in Texas.

 As part of an audit conducted during the first quarter of 2004, IESI's
accounting firm, Ernst & Young, sent out balance confirmation notices to three
customers in the Alvin Division. These customers were the City of Alvin, the City
of League City, and the City of Friendswood. The notices sought to confirm that the
amount the customer owed to IESI matched the amount owed in IESI's records. All
three customers responded that their numbers did not match IESI's. Marin was asked
to investigate in order to reconcile the discrepancies in the amounts. Several days
later, at IESI's office where the audit was being done, Ernst & Young received three
letters purportedly from Alvin, League City, and Friendswood confirming that the
original amount listed in the balance confirmation request was actually correct.

 Ernst & Young and IESI immediately suspected at least one of the letters was
a forgery. The signature of Lonna Stein on the followup letter received from League
City differed significantly from her signature on the response to the original balance
confirmation request. IESI called Lonna Stein, who denied the letter or signature had
come from her.

 IESI began an investigation of the Alvin Division. Marin denied any
involvement with the letters when IESI inquired whether she knew anything about
them. The investigation found that (1) all three letters were forgeries; (2) the fax
header indicated the letters were sent from Marin's office; (3) Melissa Lawler, a clerk
in the Alvin Division, had been asked by Marin to obtain sample letterheads from
Alvin, League City, and Friendswood; (4) money owed to IESI by its customers had
been overstated by $1.585 million; and (5) customer checks payable to IESI were
deposited into an Envirotex account in the amount of $112,209.33. After the
completion of the investigation, IESI determined that inaccuracies on accounts
receivable and payable resulted in an overstatement of the Alvin Division's profits
by $2.4 million. IESI terminated Marin's employment shortly after the investigation.

 IESI filed suit against Marin seeking (1) some of the expenses associated with
the Alvin Division investigation; (2) the IESI money deposited by Marin in the
Envirotex account; (3) bonuses paid to Marin based on the financial performance of
the Alvin Division that would not have been paid had the Division's earnings been
accurately stated; and (4) exemplary damages based on Marin's intentional conduct. 

 During discovery, Marin sent a request for disclosure under Texas Rule of
Civil Procedure 194 to IESI. (1) In its response, IESI designated Steve Moody and
Alyssa Martin as fact witnesses, allowing for the possibility that their testimony may
include expert opinion. Specifically, in response to the request for disclosure of
"persons having knowledge of relevant facts," IESI disclosed the following
information regarding Moody and Martin:

 Mr. Moody has knowledge of IESI's accounting systems, corporate
policies, and corporate procedures. He has knowledge of the facts and
circumstances surrounding the activities at the IESI Alvin office that
form the basis of this lawsuit.


 . . . .

 

 Ms. Martin is an accountant who was hired by IESI to conduct an
investigation into the activities at the Alvin office.


In response to the request for disclosure seeking information concerning testifying
experts, IESI disclosed, in pertinent part, the following:

 Mr. Moody is a fact witness and an employee of IESI. He has
knowledge of IESI's accounting systems, corporate policies, and
corporate procedures. He has knowledge of the facts and circumstances
surrounding the activities at the IESI Alvin office that form the basis of
this lawsuit. As an accounting professional, some of his testimony may
take the form of expert testimony regarding accounting matters.


 . . . . 

 

 Ms. Martin is an accountant who was hired by IESI to conduct an
investigation into the activities at the Alvin office for IESI business
purposes and not specifically for the purpose of providing expert
testimony. She is a fact witness, but as an accounting professional,
some of her testimony may take the form of expert opinion testimony
regarding accounting matters. 


 At trial, Moody and Martin testified about their employment at IESI. During
their testimony, IESI documents were admitted into evidence. The trial court
overruled Marin's objection that the documents were inadmissible due to IESI's
failure to produce the documents prior to trial, as required for evidence reviewed by
experts. The trial court admitted the documents, determining that Moody and Martin
were fact witnesses and not experts.

 After the jury trial, the trial court awarded (1) $97,239.15 in actual damages to
IESI for accounting expenses related to the investigation, bonuses paid based on
inaccurate financial information, and conversion; (2) $17,678.87 to IESI in
prejudgment interest; and (3) $310,105 in exemplary damages to IESI for intentional
fraud and misapplication of fiduciary property. The trial court denied Marin's Motion
for Remittitur and Motion for New Trial. Admissibility of Evidence

 In her first issue, Marin contends "the trial court abused its discretion in
admitting evidence that was subject to a mandatory exclusion for not being produced
in discovery." Specifically, Marin contends that IESI designated Moody and Martin
as expert witnesses but did not disclose any documents reviewed by them, which
required exclusion of the non-produced documents under the Texas Rules of Civil
Procedure. See Tex. R. Civ. P. 193.6(a), 194.2 (f)(4)(A). The exhibits about which
Marin complains are Exhibits 6, 7, 10, 11, 12, 13, 14, 15, 33, 35, 36, 37, 38, and 39. (2) 
In her ninth issue, Marin contends that the admission of the documents deprived her
of the jury's reasonable consideration of her counterclaim.

 A. Applicable Law

 "The admission and exclusion of evidence is committed to the trial court's
sound discretion." Benavides v. Cushman, Inc., 189 S.W.3d 875, 878-79 (Tex. 
App.--Houston [1st Dist.] 2006, no pet.) (citing City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it rules
without regard for any guiding rules or principles. See Alvarado, 897 S.W.2d at 754. 
We uphold the district court's evidentiary ruling if there is any legitimate basis for the
ruling. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). 

 A fact witness may give opinion testimony if his opinions are "(a) rationally
based on the perception of the witness and (b) helpful to a clear understanding of the
witness' testimony or the determination of a fact in issue." Tex. R. Evid. 701. An
expert is a witness qualified by "knowledge, skill, experience, training, or education"
in an area of "scientific, technical, or other specialized knowledge." Tex. R. Evid. 
702. An expert may testify in the form of opinions or otherwise if it "will assist the
trier of fact to understand the evidence or to determine a fact in issue." Id. A witness
may qualify as both a fact witness and an expert witness. Rogers v. Dep't of Family
& Protective Servs., 175 S.W.3d 370, 377 (Tex. App.--Houston [1st Dist.] 2005, pet.
dism'd w.o.j.) (stating witness may qualify and testify as both fact and expert
witness); see also Tex. First Nat'l Bank v. Ng, 167 S.W.3d 842, 858 (Tex.
App.--Houston [14th Dist.] 2005, judgment vacated w.r.m.) (noting bank's senior
vice president "testified as both a fact and expert witness"). 

 Rule 194 of the Texas Rules of Civil Procedure provides that if an expert is
retained by a party, the other party may request disclosure of "all documents, tangible
things, reports, models, or data compilations that have been provided to, reviewed by,
or prepared by or for the expert in anticipation of the expert's testimony." Tex. R.
Civ. P. 194.2(f)(4)(A). Texas Rule of Civil Procedure 193.6(a) provides that a party
who fails to make, amend, or supplement a discovery response in a timely manner
may not introduce in evidence the material or information that was not timely
disclosed, unless the court finds that there was good cause for the failure to make, 
amend, or supplement the discovery response timely, or that the other parties will not
be unfairly surprised or prejudiced by the failure to make, amend or supplement. 
Tex. R. Civ. P. 193.6(a). The party seeking to introduce the evidence carries the
burden of establishing good cause, lack of unfair surprise, or lack of unfair prejudice. 
Tex. R. Civ. P. 193.6(b). A finding of good cause, lack of unfair surprise, or lack of
unfair prejudice must be supported by the record. Id. The expert disclosure rules do
not apply to fact witnesses. Rather, the Texas Rules of Civil Procedure provide for
requests for production to obtain documents within the possession, custody, or
control of parties. See Tex. R. Civ. P. 196.1-.6. Moody, an employee of IESI, and
Martin, an auditor that contracted for IESI, were both subject to the control of IESI,
a party to these proceedings. 

 Hearsay is "a statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 
Tex. R. Evid. 801(d). The rules of evidence classify some evidence as non-hearsay
and some evidence as hearsay that is admissible under an exception to the hearsay
rule. See Tex. R. Evid. 802 ("Hearsay is not admissible except as provided by statute
or these rules . . . ."); Tex. R. Evid. 803 ("The following are not excluded by the
hearsay rule . . . ."). For example, one exception to the hearsay rule is records of
"regularly conducted activity." Tex. R. Evid. 803(6).

 B. Analysis

 Marin challenges the trial court's ruling that Moody and Martin are fact
witnesses rather than expert witnesses by asserting that the witness list supplied by
IESI lists them as experts. Marin, however, misstates the record. In response to
Marin's requests for disclosure, IESI designated Moody and Martin as fact witnesses,
but also identified them as "accounting professionals," stating some of their testimony
"may take the form of expert opinion regarding accounting matters." The record,
therefore, shows that some of the testimony by Moody and Martin could take the form
of an expert opinion concerning accounting matters. Although IESI designated
Moody and Martin as experts as to some accounting matters on the witness list, the
trial court ruled their testimony was admissible as testimony from fact witnesses. We
conclude the mere fact that the witness list identified Moody and Martin as possibly
giving expert testimony does not establish that they did actually give expert
testimony. See Rogers, 175 S.W.3d at 377; Tex. First Nat'l Bank, 167 S.W.3d at 858.
 In this appeal, Marin does not specifically refer to any portion of the record
where Moody and Martin testified as experts, with the exception of Moody's
testimony concerning the fees paid to Weaver and Tidwell, which is addressed in the
discussion below pertaining to Exhibit 10. Marin makes no assertion that Martin was
an expert for any reason other than the fact that she was designated as possibly giving
some expert opinion concerning "accounting matters." Marin's argument is that
Moody gave his opinion based on hearsay, which Marin contends necessarily made
Moody an expert and that Moody had to be an expert in order to testify to the
reasonableness and necessity of the Weaver and Tidwell fees. The documents
admitted through Moody, however, were not admitted as hearsay evidence relied on
by an expert. Rather, as detailed below, the documents were admitted as either non-hearsay evidence, under an exception to the hearsay rule, or were repetitive of
unobjected to testimonial evidence.

 1. Exhibits 6 and 7

 Exhibits 6 and 7 are copies of the forged letters received from Friendswood and
League City that misstate the cities' account balances. These exhibits were
introduced through Moody. Moody testified that the letters were given to him by the
auditors from Ernst & Young. Moody stated these forged letters contradicted the
earlier letters and were the event that triggered the need for an investigation of the
Alvin Division. IESI offered the exhibits for that limited purpose and not for the
truth of any matter asserted in the letters. The trial court admitted the letters on that
basis and instructed the jury accordingly.

 Marin's complaint on appeal is that Moody testified to hearsay, which only an
expert can do. But Exhibits 6 and 7 were not offered to prove the truth of the matter
asserted and, therefore, were not hearsay. See Tex. R. Evid. 801; Ash v. Hack Branch
Distrib. Co., 54 S.W.3d 401, 411 (Tex. App.--Waco 2001, pet. denied) (concluding 
out-of-court statements not hearsay because not offered for truth of matter asserted).

 We overrule Marin's first issue with respect to Exhibits 6 and 7.

 2. Exhibit 10

 Exhibit 10 is an accounting summary created by Moody showing the amount
of accounting fees incurred during the investigation of the Alvin Division, which IESI
sought as damages in this case. Marin objected that Moody would have to testify as
an expert to prove the fees were reasonable and necessary. Marin asserted that 
Moody, as an expert, had reviewed Exhibit 10 in forming his opinion that the fees
were reasonable and necessary, and, therefore, Exhibit 10 was subject to the exclusion
of Rule 193.6 because it had not been timely disclosed. When Marin objected to the
admission of Exhibit 10 and Moody's testimony concerning the accounting fees, she
complained that opposing counsel had not "given any good cause for not producing
this. And they [sic] are not showing failure to prejudice." After examining the
exhibit and questioning counsel, the trial court allowed Moody to testify to the
amount of the fees incurred.

 On appeal, Marin asserts that IESI did not carry its burden of showing good
cause or lack of unfair surprise. Marin cites only a single unpublished case to support
her contention that she was unfairly surprised. See Hatch v. Tex. Prop. & Cas. Ins.
Guar. Assoc., No. 01-06-00631-CV, 2007 WL 2011041 (Tex. App.--Houston [1st
Dist.] July 12, 2007, no pet.). However, Hatch is distinguishable. In that case, this
Court reviewed the record to see if any evidence supported the trial court's finding
that there was unfair surprise. See id. at *6. Here, we review the record to see if any
evidence supports the trial court's finding that Marin was not unfairly surprised. As
noted in Hatch, "We must uphold the trial court's evidentiary ruling if there is any
legitimate basis for the ruling." Id. (citing Owens-Corning Fiberglas Corp., 972
S.W.2d at 43).

 The record shows that Moody testified at trial that the Weaver and Tidwell fees
were "necessitated by the things that had happened [at the Alvin Division]." Moody
also testified that the amounts charged by Weaver and Tidwell were reasonable
charges. Marin did not object to either of these statements. When IESI's counsel
began to ask Moody if he knew what accountants were paid and if he was an
accountant, Marin's counsel objected. 

 In a discussion before the bench, the trial court stated it found no unfair
surprise to Marin because the petition specifically sought damages based on the costs
of investigating the Alvin Division. IESI sought damages for "[t]he costs incurred
by IESI in investigating and remedying the accounting and management problems
caused by [Marin's] conduct. This amount is not in excess of $200,000.00." Within
the factual allegations, IESI specifically named Weaver & Tidwell, but not Ernst &
Young. Although it did not disclose a precise amount, IESI disclosed it was seeking
economic damages for "the cost of IESI's investigation into and correction of the
false accounting entries" at the Alvin Division. Furthermore, during his deposition,
Moody testified concerning the amounts paid to Weaver & Tidwell and to Ernst &
Young for the investigation. The trial court also stated there was no surprise with
respect to the Ernst & Young invoice because it was a single amount and was not
itemized or detailed. In finding no surprise as to Exhibit 10, the trial court said it was
also ruling to "sustain the objection as to any further testimony by this witness as to
what's reasonable and necessary as to any further questioning along those lines." 
Marin did not request the jury be instructed to disregard the previous testimony that
the fees were reasonable and necessary. 

 Concerning the Weaver & Tidwell fees, we hold the record supports the trial
court's finding that Marin was not unfairly surprised. Both the petition and discovery
responses gave her notice that IESI sought as damages its costs for investigating the
Alvin Division. See Williams v. County of Dallas, 194 S.W.3d 29, 33 (Tex.
App.--Dallas 2006, pet. denied) (upholding trial court's determination of lack of
unfair surprise concerning back taxes accrued after filing of suit where petition gave
notice lawsuit covered all claims for delinquent taxes, including taxes becoming
delinquent after filing of suit until judgment). We also note that the amount of
damages reflected in Exhibit 10 and awarded by the jury was $47,840.31,
significantly below the amount of $200,000 pleaded. 

 With respect to the Ernst & Young fees, we hold that the error, if any, in
admitting the evidence was harmless. The jury awarded "$0" in damages for the
Ernst & Young fees. 

 We overrule Marin's first issue with respect to Exhibit 10.

 3. Exhibits 11, 12, 13, 14, and 15

 Exhibits 11, 12, 13, and 14 are IESI's profit and loss statements for the
calendar years 2000, 2001, 2002, and 2003. Exhibit 15 is a summary of Marin's
earnings and bonuses paid from IESI. Marin contends these documents, "which go
to the amount and theory of damages," should have been produced in response to her
requests for disclosure because they "had all been reviewed by, if not prepared by,
Steve Moody."

 Moody was the controller for IESI. As such, Moody was the employee in
charge of the books and records of IESI. Moody was also personally involved in
investigating the Alvin Division. Moody's testimony was based on his perception as
the primary person at IESI in charge of making, maintaining, and reviewing the
corporate books and accounts. We conclude the trial court properly characterized
Moody's testimony concerning these exhibits as that of a fact witness and not an
expert witness. See Hartis v. Century Furniture Indus., Inc., 230 S.W.3d 733, 736
(Tex. App.--Houston [14th Dist.] 2007, no pet.) (furniture store's controller's
opinion testimony concerning fair market price admissible as fact witness testimony
because it was based on controller's perception and experience in selling furniture).
The provisions of Rule 194.2(f) do not apply to fact witnesses. Therefore, Exhibits
11, 12, 13, 14, and 15 were not required to be produced in response to Marin's
request for disclosure and are not subject to the exclusion provisions of Rule 193.6.

 We overrule Marin's first issue with respect to Exhibits 11, 12, 13, 14, and 15.

 4. Exhibit 33

 Exhibit 33 is a list of accounts for the Alvin Division. Marin objected that it
was a document prepared or reviewed by Martin and not disclosed. IESI responded
that Martin, as an accountant that performed the audit of IESI, would be testifying to
the facts found in the audit and not offering an opinion based on Exhibit 33. On
appeal, Marin asserts Exhibit 33 "goes directly to the amount and method of
calculating damages." 

 Martin testified to the content of Exhibit 33, including that she found a number
of customers of the Alvin Division that had been charged but not made any payments. 
She also stated the records of the accounts looked suspicious to her as an auditor. 
Marin did not object to any of this testimony, but only to the admission of Exhibit 33.

 Because she failed to object to Martin's testimony, Marin waived any objection
to the admission of Exhibit 33. See Bay Area Healthcare Group, Ltd. v. McShane,
239 S.W.3d 231, 235 (Tex. 2007) (complaining party waives error in admission of
evidence if evidence introduced elsewhere without objection). 

 We overrule Marin's first issue with respect to Exhibit 33.

 5. Exhibit 35

 Exhibit 35 is an accounting "analytic" run by IESI. Marin's objection to the
admission of this document was initially sustained. However, IESI re-offered Exhibit
35 during redirect examination, asserting Marin "spent a half hour cross-examining
[Moody] on that document." The trial court allowed the document to be admitted on
that basis and Marin did not object when it was re-offered. Error in the improper
admission of evidence is usually deemed harmless if the objecting party "opens the
door" by introducing the same evidence or evidence of a similar character. Sw. Elec.
Power Co. v. Burlington N. R.R. Co., 966 S.W.2d 467, 473 (Tex. 1998). Furthermore,
by failing to object to its admission when it was re-offered under a different theory,
any error is not preserved. See Bay Area Healthcare Group, Ltd., 239 S.W.3d 231
at 235.

 We overrule Marin's first issue with respect to Exhibit 35. (3)

 6. Exhibit 36, 37, 38, and 39

 Exhibits 36 through 39 are invoices from landfill companies charging IESI for
their services. Marin's objection to the admission of these invoices was initially
sustained. However, when IESI offered these a second time, Marin did not object. 
Therefore, Marin waived any error in the admission of these documents. See id.

 We overrule Marin's first issue with respect to Exhibits 36, 37, 38 and 39.

Forgery, Fraud, and Misapplication of Fiduciary Property In her fourth, fifth, and sixth issues, Marin challenges the legal and factual
sufficiency of the evidence to support the findings that she committed forgery, fraud,
and misapplied fiduciary property. The instructions to the jury for each of these
allegations required that proof meet the clear and convincing evidentiary standard. 

 A. Sufficiency of Evidence under Clear and Convincing Standard


 Clear and convincing evidence is "proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations sought to be
established." In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009). "When the legal
sufficiency of the evidence is challenged: [A] court should look at all the evidence
in the light most favorable to the finding to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that its finding was true." Id. "To
give appropriate deference to the factfinder's conclusions and the role of a court
conducting a legal sufficiency review, looking at the evidence in the light most
favorable to the judgment means that a reviewing court must assume that the
factfinder resolved disputed facts in favor of its finding if a reasonable factfinder
could do so." Id. "A corollary to this requirement is that a court should disregard all
evidence that a reasonable factfinder could have disbelieved or found to have been
incredible." Id. "This does not mean that a court must disregard all evidence that
does not support the finding." Id. "Disregarding undisputed facts that do not support
the finding could skew the analysis of whether there is clear and convincing
evidence." Id. "If, after conducting its legal sufficiency review of the record
evidence, a court determines that no reasonable factfinder could form a firm belief or
conviction that the matter that must be proven is true, then that court must conclude
that the evidence is legally insufficient." Id. at 345-46.

 "When the factual sufficiency of the evidence is challenged, only then is
disputed or conflicting evidence under review." Id. at 346. "If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually insufficient." Id. 
"The court of appeals should further explain in its opinion 'why it has concluded that
a reasonable factfinder could not have credited disputed evidence in favor of the
finding.'" Id.

 Any ultimate fact may be proved by circumstantial evidence. Russell v.
Russell, 865 S.W.2d 929, 933 (Tex. 1993); see also Lee Lewis Const., Inc. v.
Harrison, 70 S.W.3d 778, 785 (Tex. 2001) (circumstantial evidence can prove gross
negligence to support award of punitive damages).

 B. Forgery

 In her fourth issue, Marin challenges the legal and factual sufficiency of the
evidence under the clear and convincing standard to support the finding that she
committed forgery.

 1. Applicable Law

 Under section 32.21, a person commits an offense if he forges a writing with
intent to defraud or harm another. Tex. Penal Code Ann. § 32.21(b) (Vernon Supp.
2008). "Forge" means to alter, make, complete, execute, or authenticate any writing
so that it purports: (1) to be the act of another who did not authorize that act; (2) to
have been executed at a time or place or in a numbered sequence other than was in
fact the case; or (3) to be a copy of an original when no such original existed. Id.
§ 32.21(a)(1)(A). The intent to defraud or harm may be established by circumstantial
evidence. Williams v. State, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985).

 2. The Jury Instructions

 Within her fourth issue, Marin contends the "key element of intent to defraud
or harm was omitted from the jury charge." Marin asserts that without a jury
instruction on that element, the award of exemplary damages cannot stand. Texas
Rule of Civil Procedure 278 provides, in pertinent part, "Failure to submit a definition
or instruction shall not be deemed a ground for reversal of the judgment unless a
substantially correct definition or instruction has been requested in writing and
tendered by the party complaining of the judgment." Tex. R. Civ. P. 278; see
McCarthy v. Wani Venture, A.S., 251 S.W.3d 573, 585-86 (Tex. App.--Houston [1st
Dist.] 2007, pet. denied) (holding complaint concerning definition in jury charge
waived despite party's objection because Rule 278 requires tender of substantially
correct instruction). 

 Question 9, the forgery question, asked the jury, "Do you find by clear and
convincing evidence that JANELL S. MARIN knowingly or intentionally committed
forgery?" The trial court instructed the jury on the burden of proof for "clear and
convincing evidence," as well as the definitions of "knowingly" and "intentionally." 
Finally, the trial court instructed the jury as follows:

 "Forgery" means:


 (A) to alter, make, complete, execute, or authenticate any writing so that
it purports:


 (i) to be the act of another who did not otherwise act;


 (ii) to have executed at a time or place in a numbered
sequence other than was in fact the case; or


 (iii) to be a copy of the original when no such original
existed.


During the charge conference, Marin made the following objection to Question 9:

 Question 9 is again, another, quote "cap busting" question. And again,
there are no pleadings that would justify submitting Question No. 9
under the penal code. It's making allegations with regards to forgery
that are not within the original petition that -- the current active petition. 
And there is insufficient evidence or no evidence that would support
this. Any documents that might be used to justify any -- this allegation
should have been produced in response to legitimate discovery requests
under our requests for disclosure and were not. No good cause has been
shown and we would object to the submission of Question No. 9.


Marin did not object that the instruction accompanying Question 9 was not correct,
nor did she request a "substantially correct definition or instruction." Because Marin
never objected on the ground that the jury was not instructed on the "key element of
intent to defraud or harm," any error on this ground is not preserved for appeal. See
Tex. R. Civ. P. 278; McCarthy, 251 S.W.3d at 585-86. We must also address the
sufficiency of the evidence in light of the charge given to the jury. See St. Joseph
Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2002) (noting that when charge is submitted
without objection, sufficiency of evidence is measured against charge given). 

 3. Analysis

 The record shows that while Ernst & Young was conducting a routine audit of
IESI, it sent balance confirmation letters to a number of IESI's clients, including the
cities of Alvin, Friendswood, and League City. All three cities responded, stating
they owed less than the amount reflected in IESI's books. Marin was asked to contact
the cities concerning the discrepancies. Within days, the auditors working at IESI
received letters from the three cities stating their earlier letters were incorrect and 
they owed the amounts stated in IESI's books. The letters were all faxed from the
Alvin Division. The auditors immediately noticed the signature of Lonna Stein, the
controller for League City, was not the same on the second confirmation letter as on
the first letter. At trial, Stein and the city employees from Alvin and Friendswood all
testified that the later confirmation letters were not written by them and that their
signatures were forged. 

 Tom Brown, one of IESI's vice-presidents, testified that when he confronted
Marin with the forged letters, she reacted strangely and this caused him to believe she
had something to do with the forged letters. Brown also testified that an Alvin
Division employee told him that Marin instructed the employee to get samples of the
letterheads from the cities of Alvin, Friendswood, and League City. 

 Melissa Lawler, another former Alvin Division employee, testified that, shortly
before the time the forged letters were sent to the auditors, Marin asked her to get
samples of the letterhead from Alvin, Friendswood, and League City. The time and
date stamp on all three forged letters matches the stamp from Marin's fax machine.

 Marin identifies evidence that she contends renders the above evidence legally
and factually insufficient. Marin asserts, "Lawler testified she never gave Marin the
supposedly requested letterhead from the City of Friendswood and only gave Marin
letterhead from the League City Chamber of Commerce (not the City). None of the
documents had anything to do with the forged letters IESI claimed, and only one, (a
letter from City of Alvin) was even on similar letterhead." Marin also emphasizes
that no witness testified directly that Marin forged the letters from the cities. For
example, Moody testified that he had no idea who created the letters or whether
Marin was involved. Similarly, Stein testified that she had no knowledge that Marin
had anything to do with Stein's name appearing on the letter that purported to be from
League City. Marin also contends that Lawler's testimony was unreliable because
she was on paid leave from IESI and because she testified inconsistently concerning
whether IESI money had been deposited into the Envirotex account. Furthermore,
IESI's accounting manager and chief development officer said they never observed
Marin act inappropriately or violate her duties as an employee of IESI. 

 It is undisputed that the letters from the cities were not from the city officials
whose names appear on the letters--in other words the letters purported "to be the act
of another who did not otherwise act." As charged, the only remaining element that
the jury needed to form a firm belief or conviction was the matter whether it was
Marin who "alter[ed], ma[d]e, complete[d], execute[d], or authenticate[d]" the letters. 
Here, circumstances introduced into evidence allowed the jury to form that firm belief
or conviction. Marin asked for samples of the cities' letterheads shortly before the
forged letters were sent to the auditors. Although Lawler did not provide the copies
of the letterhead that were used, the fact remains that shortly before the forged letters
were sent to the auditors Marin asked for the same or similar type of letterheads as
the ones used in this case. Additionally, the forged letters were faxed from Marin's
fax machine. When confronted about the forgeries, Marin acted suspiciously. The
letters were sent to confirm erroneous account balances--balances that could reflect
upon the amount of Marin's bonuses, which were tied to the performance of the Alvin
Division. Finally, the credibility of Lawler and any other witness is to be decided by
the jury, along with the weight to be given any testimony. See Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). A reasonable juror could form a
firm belief or conviction Marin made the letters so that they purported "to be the act
of another who did not otherwise act." See Chapa v. Tony Gullo Motors I, L.P., No.
09-03-00568-CV, 2004 WL 1902533, at *8 (Tex. App.--Beaumont, Aug. 26, 2004),
rev'd on other grounds, 212 S.W.3d 299 (Tex. 2006) (holding evidence legally
sufficient to support forgery finding under clear and convincing standard where
plaintiff testified her signature and signature of her deceased husband were forged
and presented proof of her usual signature for jury to review). Likewise, the disputed
evidence is such that a reasonable factfinder could have resolved that disputed
evidence in favor of the finding of forgery. See id. (holding evidence factually
sufficient to support forgery finding under clear and convincing standard). Therefore,
we hold the evidence is legally and factually sufficient to support the jury's finding
concerning forgery.

 We overrule Marin's fourth issue.

 C. Fraud

 In her fifth issue, Marin challenges the legal and factual sufficiency of the
evidence under the clear and convincing standard to support the finding that she
committed fraud by making the same assertions she makes in the forgery case.

 The jury was instructed,

 Fraud occurs when-- 


 a. [A] party makes a material representation[,]


 b. The misrepresentation is made with knowledge of its
falsity or made recklessly without any knowledge of the
truth and as a positive assertion,


 c. The misrepresentation is made with the intention that it
should be acted on by the other party, and


 d. The other party relies on the misrepresentation and thereby
suffers injury.


 "Misrepresentation" means a false statement of fact.


See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001)
(stating elements of common-law fraud: (1) material representation that was false
when made; (2) when representation was made, speaker knew it was false or made it
recklessly as positive assertion without any knowledge of its truth; (3) speaker made 
representation with intent that other party should act upon it; (4) other party actually
and justifiably relied on representation; and (5) thereby suffered injury).

 The record shows the books of the Alvin Division contained customers or other
accounts receivable that did not exist. In addition, the books overstated the balances
owed by Friendswood, League City, and Alvin. The incorrect account information
resulted in the Alvin Division appearing to be more profitable than it was. Marin was
paid bonuses based on the profitability of the Alvin Division, as incorrectly stated in
the books. Moody testified that Marin, as the manager for the Alvin Division, was
in charge of the books and tracking the accounts for the division. Moody also
testified that Marin's user identification was linked with some of the falsified
accounts and transactions. 

 Furthermore, the jury was presented with evidence that the letters from Alvin,
League City, and Friendswood were forgeries. A former Alvin Division employee
testified that Marin had asked her to obtain sample letterheads from Alvin, League
City, and Friendswood. The fax header indicated the forged letters were sent from
Marin's office. The three forged letters contained misstatements of fact concerning
the balance owed by the three cities.

 A reasonable juror could form a firm belief or conviction Marin knowingly
misrepresented the accounts with the intention that IESI would act upon the
information in paying Marin's bonuses, and, therefore, the evidence is legally
sufficient to establish fraud. See Foley v. Parlier, 68 S.W.3d 870, 880-81 (Tex.
App.--Fort Worth 2002, no pet.) (holding evidence legally sufficient to support
jury's finding of fraud under clear and convincing standard where plaintiff testified
defendant misrepresented value of business plaintiff wished to purchase, but
defendant testified she did not). Also, the disputed evidence is such that a reasonable
factfinder could have resolved that disputed evidence in favor of the finding of fraud. 
See id. (holding evidence factually sufficient to support fraud finding under clear and
convincing standard). Therefore, we hold the evidence is legally and factually
sufficient to support the jury's finding concerning fraud. 

 We overrule Marin's fifth issue.

 D. Misapplication of Fiduciary Property

 In her sixth issue, Marin challenges "[w]hether the evidence was legally and
factually sufficient to support the jury's findings that by clear and convincing
evidence Janell Marin committed [sic] misapplied fiduciary property." Specifically,
Marin contends the evidence is insufficient because there was no evidence that Marin
withdrew money from the Envirotex account that belonged to IESI.

 Question 8 asked the jury, "Do you find by clear and convincing evidence that
JANELL S. MARIN knowingly or intentionally misapplied fiduciary property?" The 
definitions accompanying this question informed the jury of the meaning of "clear
and convincing evidence," "intentionally," and "knowingly." The jury was also told, 

 "Misapply" means deal with property contrary to


 (A) An agreement under which the fiduciary holds the property 
or

 (B) A law prescribing the custody or disposition of the property.


See also Tex. Penal Code Ann. § 32.45(a)(2) (Vernon Supp. 2009).

 The evidence shows that Marin deposited checks tendered for payment to IESI
into the Envirotex account she controlled. Moody testified that customer payments
should have been deposited into an IESI account and Marin did not have the authority
to deposit customer payment checks into Envirotex's account. Furthermore, IESI did
not know or approve of Marin's depositing of customer payment checks into the
Envirotex account. Moody also testified that he examined Envirotex's account and
saw that $112,209.33 of checks payable to IESI were deposited in the account and
that only $96,757,96 worth of checks had been written to IESI out of that account, so
that the Envirotex account had approximately $15,000 in its account that should have
been in the IESI account.

 Marin contends there is no evidence she "ever got money out of the Envirotex
account that was not hers." However, the withdrawal of the money was not part of
the definition of misapplication of fiduciary property given to the jury. We address
the sufficiency of the evidence in light of the charge given to the jury. See St. Joseph
Hosp., 94 S.W.3d at 530. Here, the evidence supports the jury's finding that Marin
deposited IESI money into the Envirotex contrary to her duties as an IESI employee. 
 A reasonable juror could form a firm belief or conviction Marin dealt with
property contrary to an agreement with IESI concerning the property. See Bailey v.
State, No. 03-02-00622-CR, 2003 WL 22859984, at *6 (Tex. App.--Austin Dec. 4,
2003, pet. ref'd) (evidence legally sufficient to support finding beyond reasonable
doubt defendant misapplied fiduciary property by depositing funds from joint account
into defendant's personal account). Looking to all the evidence, the disputed
evidence is such that a reasonable factfinder could have resolved that disputed
evidence in favor of the finding of misapplication of fiduciary property. See id.
(evidence factually sufficient to support finding beyond reasonable doubt defendant
misapplied fiduciary property by depositing funds from joint account into defendant's
personal account). 

 We overrule Marin's sixth issue.

Exemplary Damages

 In her third issue, Marin asserts that an award of exemplary damages in excess
of the statutory cap cannot be supported "without having any pleadings or without
being tried by consent." Marin contends in her second issue that "the judgment for
exemplary damages was excessive and exceeded the statutory cap." Marin presents
the same argument for her second issue as she does for her seventh issue, in which
she asserts the evidence is legally and factually insufficient to support exemplary
damages. 

 A. Exemplary Damages and the Statutory Cap

 Exemplary damages may be awarded only if the claimant proves by clear and
convincing evidence that the harm with respect to which the claimant seeks recovery
of exemplary damages results from fraud, malice, or gross negligence. Tex. Civ.
Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2009). In addition, exemplary
damages awarded against a defendant may not exceed an amount equal to the greater
of (1) two times the amount of economic damages; plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) $200,000. Id.
§ 41.008(b) (Vernon Supp. 2009). This section requiring a cap on exemplary
damages does not apply if the plaintiff seeks recovery of exemplary damages based
on certain enumerated acts committed intentionally or knowingly, including forgery,
misapplication of fiduciary property, and certain types of fraudulent conduct. Id.
§ 41.008(c)(8), (10), (11) (Vernon Supp. 2009). Here, the jury awarded $310,105 for
exemplary damages. The judgment shows actual damages at $97,239.15. Therefore,
if the exemplary damages cap applies in this case, the exemplary damages should be
capped at $200,000. See id. § 41.008(b). 

 The judgment awards exemplary damages for breach of fiduciary duty and
fraud. The jury was asked to assess exemplary damages based upon its answer to
Question 1 concerning a breach of fiduciary duty or its answer to Question 2
concerning fraud. The breach of fiduciary duty exception to the damages cap refers
to section 32.45 of the Texas Penal Code that provides that a person commits an
offense if he intentionally or knowingly misapplies property he holds as a fiduciary
in a manner that involves substantial risk of loss to the owner of the property. See id.
§ 41.008(c)(11); Tex. Penal Code Ann. § 32.45 (Vernon Supp. 2009). Because the
jury instructions and judgment refer to breach of fiduciary duty this was properly one 
basis for exceeding the exemplary damages cap.

 The exceptions for the cap that refer to fraudulent conduct refer to sections
32.46 and 32.47 of the Texas Penal Code. Section 32.46 is called "Securing
Execution of Document by Deception," and states, "A person commits an offense, if
with intent to defraud or harm any person, he, by deception: . . . causes another to
sign or execute any document affecting property or service or the pecuniary interest
of any person." Tex. Penal Code Ann. § 32.46 (Vernon Supp. 2009). Section 32.47
is called "Fraudulent Destruction, Removal, or Concealment of Writing," and it
states, "A person commits an offense if, with intent to defraud or harm another, he
destroys, removes, conceals, alters, substitutes, or otherwise impairs the veracity,
legibility, or availability of a writing, other than a governmental record." Id. § 32.47.

 As noted above, the jury was instructed that a fraud occurrs when

 a. [A] party makes a material representation[,]


 b. The misrepresentation is made with knowledge of its
falsity or made recklessly without any knowledge of the
truth and as a positive assertion,


 c. The misrepresentation is made with the intention that it
should be acted on by the other party, and


 d. The other party relies on the misrepresentation and thereby
suffers injury.


The finding of fraud here, therefore, does not conform with either of the penal code
sections mentioned in the section that allows the cap to be exceeded. See id.
§§ 32.46, 32.47. Because the jury instructions and judgment refer to fraudulent
conduct that was not the type of conduct described in section 41.008 that allows the
damages cap to be exceeded, the type of fraud found here was not a proper basis for
exceeding the exemplary damages cap. See Madison v. Williamson, 241 S.W.3d 145,
161 (Tex. App.--Houston [1st Dist.] 2007, pet. denied) ("Before a court will apply
the exception to the statutory damage caps in section 41.008(c), a plaintiff must
obtain jury findings that the defendant violated one of the criminal code provisions
listed in the statute, and that the violation was committed knowingly or
intentionally."). 

 In summary, there was no instruction pertaining to exemplary damages for the
forgery itself; thus, the judgment does not award exemplary damages for forgery. 
Furthermore, the finding of fraud by the jury does not conform with the type of fraud
for which the exemplary damages cap may be exceeded. We, therefore, focus solely
on whether the exemplary damages cap could be exceeded for the breach of fiduciary
duty. 

 B. Notice from the Pleadings

 Marin contends the trial court's judgment is erroneous by failing to cap the
damages at $200,000 because the pleadings by IESI did not specifically plead a
request to exceed the damages cap. Texas follows a "fair notice" standard for
pleading, which looks to whether the opposing party can ascertain from the pleading
the nature and basic issues of the controversy and what testimony will be relevant. 
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000). Rule 47
of the Texas Rule of Civil Procedure provides a pleading "shall contain . . . a short
statement of the cause of action sufficient to give fair notice of the claim involved
. . . ." Tex. R. Civ. P. 47. "The purpose of this rule is to give the opposing party
information sufficient to enable him to prepare a defense." Roark v. Allen, 633
S.W.2d 804, 810 (Tex. 1982). The test of fair notice is whether an opposing attorney
of reasonable competence, on review of the pleadings, can ascertain the nature and
the basic issues of the controversy and the testimony probably relevant. Bowen v.
Robinson, 227 S.W.3d 86, 91 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). 
The "fair notice" requirement of Texas pleading relieves the pleader of the burden of
pleading evidentiary matters with meticulous particularity. Id.

 In addition to the general "fair notice" standard of Rule 47, Rule 56 states,
"When items of special damage are claimed, they shall be specifically stated." Tex.
R. Civ. P. 56. This Court has stated the recovery of exemplary damages must be 
"supported by express allegations." Al Parker Buick Co. v. Touchy, 788 S.W.2d 129,
130 (Tex. App.--Houston [1st Dist.] 1990, orig. proceeding). 

 Here, IESI states in its petition under a section entitled "Exemplary Damages"
that 

 Considering the wrongful nature of Ms. Marin's transactions, her
fraudulent acts and omissions, her intentional acts, her breach of the
fiduciary duties she owed to IESI, and the degree to which her actions
offend the public's traditional sense of justice and propriety, an award
of exemplary damages is justified and warranted in this case. IESI sues
for exemplary damages.


IESI's petition gives fair notice that IESI sought exemplary damages based on
Marin's conduct, specifically alleging "breach of fiduciary duties owed to IESI." 
IESI includes factual allegations that Marin forged letters from Alvin, Friendswood,
and League City and that she deposited checks payable to IESI in accounts that she
controlled. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c)(8), (10). 

 We conclude IESI's petition seeking exemplary damages provides fair notice
of the basic issues supporting its claim for intentional misapplication of fiduciary
property and, therefore, necessarily alerted Marin that the exemplary damages cap
would not apply because the statute governing exemplary damages provides that the
cap may be exceeded for that circumstance. See Horizon/CMS Healthcare Corp., 34
S.W.3d at 896; cf. Al Parker Buick Co. v. Touchy, 788 S.W.2d 129, 130 (Tex.
App.--Houston [1st Dist.] 1990, orig. proceeding) (denying discovery of defendant's
net worth because petition alleged "no facts that might establish [plaintiff's] right to
a recovery of exemplary damages from [defendant]").

 Marin also contends that under Rule 56, a party seeking exemplary damages
must not only specifically plead for exemplary damages but also must specifically
plead the intent to "bust the cap"--i.e., the intent to exceed the limit on exemplary
damages imposed by section 41.008 of the Texas Civil Practice and Remedies Code. 
See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b). Marin cites no authority for
this proposition, stating it is a matter of first impression. We decline to create a new
pleading requirement in exemplary damages cases.

 Although not directly on point, several courts have addressed the pleading
requirement for the cap on punitive damages, holding the cap is an affirmative
defense and must be specifically pleaded by the defendant for it to apply. Wackenhut
Corrections Corp. v. de la Rosa, 2009 WL 866791, at *50 (Tex. App.--Corpus
Christi Apr. 2, 2009, no pet.); Horizon/CMS Healthcare Corp. v. Auld, 985 S.W.2d
216, 233 (Tex. App.--Fort Worth 1999), rev'd in part on other grounds, 34 S.W.3d
887 (Tex. 2000). (4) In addition, the Supreme Court of Texas, addressing a different
statutory cap on damages, (5)
 referred to the entitlement to the cap as an affirmative
defense. Horizon/CMS Healthcare Corp., 34 S.W.3d at 904. Finally, in addressing
the cap on exemplary damages in the prior version of Chapter 41, the Supreme Court
of Texas held that a defendant's pleading gave "fair notice" of defendant's intent to
invoke the statutory cap on exemplary damages, despite referring to incorrect section
of Chapter 41. Id. at 896-97. 

 Here, the pleadings gave fair notice of the intent to seek exemplary damages,
including allegations of conduct to which the cap does not apply, which necessarily
alerted Marin of its intent to exceed the damages cap. The jury made findings,
supported by sufficient evidence, that such conduct occurred. Because Marin cites
to no authority to support her contention concerning the requirement of pleading an
intent to "bust the cap" on exemplary damages, and authority from the Supreme Court
of Texas suggests her position is incorrect, we overrule Marin's third issue.

 C. Sufficiency of Evidence for Exemplary Damages

 In her seventh issue, Marin challenges "[w]hether the evidence was legally and
factually sufficient to support the jury's findings that by clear and convincing
evidence Janell Marin be assessed punitive damages." 

 Marin challenges exemplary damages for forgery, but the jury did not award
exemplary damages for forgery. The judgment can be upheld if the evidence is
legally sufficient concerning breach of fiduciary duty.

 In her brief, Marin's sole challenge to the award for exemplary damages for
fraud or breach of fiduciary duty states,

 It is impossible for a jury to find in favor of [IESI] on this issue by
"clear and convincing evidence" in the face of all the witnesses[']
statements that they had no proof that Janell Marin or anyone on her
behalf was, in any way, involved in forgery or fraud.


 The record is absent of any evidence [sic] that links Janell Marin to
forgery, fraud, or misapplying fiduciary property.


(Emphasis in original). 

 We have already addressed the sufficiency of the evidence supporting the
jury's findings of forgery, fraud, and misapplication of fiduciary duty and found the
evidence both legally and factually sufficient. We therefore overrule Marin's second
and seventh issue.

Conversion


 In her eighth issue, Marin challenges the legal and factual sufficiency of the
evidence that IESI proved by a preponderance of the evidence it "suffered actual
damages from the deposit of the City of Oyster Creek and Jamaica Beach checks in
the Envirotex, Inc. Account."

 In reviewing the trial court's verdict for legal sufficiency, we credit evidence
that supports the verdict if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). A challenge to the legal sufficiency of evidence will be sustained when,
among other things, the evidence offered to establish a vital fact does not exceed a
scintilla. Id. at 810. Evidence does not exceed a scintilla if it does no more than
create a mere surmise or suspicion that the fact exists. Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 601 (Tex. 2004).

 In determining the factual sufficiency of the evidence to support a jury's
finding, courts of appeals are to weigh all the evidence, both for and against the
finding. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing
a factual sufficiency challenge to a finding where the burden of proof is not on the
complaining party, we set aside the verdict only if the evidence in support of the
finding is so weak as to render the verdict clearly wrong and manifestly unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In reviewing a factual sufficiency
challenge to a finding where the burden of proof is on the complaining party, that
party must show that "the adverse finding is against the great weight and
preponderance of the evidence." Dow Chem. Co., 46 S.W.3d at 242. In conducting
our review, we may not substitute our judgment for that of the jury, which is the sole
judge of the credibility of witnesses and the weight to be given to their testimony.
Golden Eagle Archery, Inc., 116 S.W.3d at 761.

 We address the sufficiency of the evidence in light of the charge given to the
jury. See St. Joseph Hosp., 94 S.W.3d at 530.

 Jury Question 3 concerning conversion states,

 Do you find that JANELL S. MARIN converted the check from the City
of Oyster Creek in the amount of $4,559.14 and/or the check from the
Village of Jamaica Beach in the amount of $9,839.70?

 

 INSTRUCTION

 "Conversion" as used in this charge means the wrongful exercise of
dominion and control over IESI TX CORPORATION'S checks, in
denial of or inconsistent with its rights. A conversion may occur from
the unauthorized and wrongful control, wrongful acquisition or
wrongful withholding of the checks which is to its exclusion or
inconsistent with its property rights.


The jury answered yes for both Oyster Creek and Jamaica Beach. In response to
Question 4, the damages question, the jury determined the damages in the amount of
each check.

 On appeal, Marin contends that the only witness at trial who examined the
Envirotex account was Moody, who testified "he did not have any information that
Janell Marin ended up getting any money out of the Envirotex account for her
personal use that was not hers." Marin's concluding argument in this section of her
brief is that "it is pure speculation as to whether IESI was owed the funds from the
City of Oyster Creek and Village of Jamaica Beach."

 The evidence is legally and factually sufficient to support the jury's finding of
conversion. Although Marin contends there is no evidence that she "got any money
out of the Envirotex account that was not hers," whether she took money that was not
hers out of the account is irrelevant based on the jury charge. The jury was instructed
that "conversion may occur from the unauthorized and wrongful control, wrongful
acquisition or wrongful withholding of the checks which is to its exclusion or
inconsistent with its property rights." The evidence is undisputed that Marin
deposited the checks into her Envirotex account when they were properly payable to
IESI. This is more than a scintilla of evidence from which a rational juror could
determine that Marin had exercised control over the checks in a manner inconsistent
with IESI's rights to the checks. We therefore hold the evidence is legally sufficient
to support the jury's finding concerning conversion. See Am. Network Leasing Corp.
v. Corporate Funding Houston, Inc., No. 01-00-00789-CV, 2002 WL 31266230, at
*15 (Tex. App.--Houston [1st Dist.] Oct. 10, 2002, pet. dism'd) (mem. op.)
(overruling sufficiency of evidence challenge to claim for conversion of partnership
checks deposited in account of partner instead of partnership account, as required by
agreement).

 We also conclude the evidence is not so weak as to render the verdict clearly
wrong and manifestly unjust and is, therefore, factually sufficient. See id. at *15.

 We overrule Marin's eighth issue.

Actual Damages

 In her motion for rehearing, Marin asserts that the evidence is legally
insufficient to support the jury's award of actual damages to IESI for reasonable and
necessary accounting fees paid to Weaver and Tidwell for the investigation of the
Alvin Division. Specifically, Marin contends there is no evidence that the fees were
"reasonable and necessary." Marin also contends the evidence is legally insufficient
to support the jury's award of actual damages for bonuses wrongfully paid to Marin
for any year other than 2003.

 A. Weaver and Tidwell Fees

 Concerning the Weaver and Tidwell fees, Marin asserts that this Court held
that Moody testified as a fact witnesses, not an expert. Marin also contends that
because the fees had to be proved reasonable and necessary by an expert, there is no
longer any expert evidence in the record to support a finding that the fees were
reasonable and necessary. First, as we stated above, a witness can testify as both a
fact witness and an expert witness in the same case. See Rogers, 175 S.W.3d at 377;
Tex. First Nat'l Bank, 167 S.W.3d at 858. In our discussion above concerning
Exhibit 10, concerning the Weaver and Tidwell fees, we did not hold that Moody was
not an expert with respect to the reasonableness and necessity of the fees. Rather, our
holding concerning Exhibit 10 accepted Marin's assertion that Moody was an expert
on this subject matter and addressed whether there was unfair surprise in admitting
Exhibit 10. Second, as also discussed above, Moody testified, without an objection
from Marin, that the fees were necessary due to the accounting problems at the Alvin
Division and were reasonable.

 We overrule this assertion in Marin's motion for rehearing. 

 B. Bonuses

 Marin did not raise the issue concerning actual damages for the bonuses paid
to her in her original brief to this court. This issue is therefore waived. See Coastal
Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 885 (Tex.
2001) (holding that appellate issue not raised until motion for rehearing was waived);
Jacobs v. Satterwhite, 65 S.W.3d 653, 655-56 (Tex. 2001) (holding that party waives
error by failing to raise issue on appeal); Wheeler v. Methodist Hosp., 95 S.W.3d 628,
646 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (stating that issue in motion for
rehearing is waived if the original brief "is not sufficient to acquaint the Court with
the issue and does not present an argument that would allow the court to decide the
issue").

 We overrule this assertion in Marin's motion for rehearing. 

Conclusion

 We affirm the judgment of the trial court. 




 Elsa Alcala

 Justice

 

Panel consists of Justices Keyes, Alcala, and Hanks.
1. See Tex. R. Civ. P. 194.1, 194.2 (providing basic discovery of specific categories of
information without objection).
2. Marin's brief mistakenly refers to Exhibit 8. Based on the description of the exhibit
and the record, it is clear she is referring to Exhibit 7. Moreover, in her original brief,
Marin included eight other exhibits, but she concedes in her reply brief that she did
not properly object to those exhibits at trial. The challenge to those exhibits,
therefore, is waived. See Mieth v. Ranchquest, Inc., 177 S.W.3d 296, 307 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) (holding failure to object to evidence at trial
waives complaint on appeal) (citing Tex. R. App. P. 33.1).
3. In the motion for rehearing, Marin suggests that IESI's law firm has a pattern of not
complying with discovery, citing to Thompson v. Winkelman, No. 01-06-00457-CV,
2008 WL 921041 (Tex. App.--Houston [1st Dist.] Apr. 3, 2008, no pet.). This
assertion is made for the first time in the motion for rehearing and is therefore waived. 
See Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880,
885 (Tex. 2001) (holding that appellate issue not raised until motion for rehearing was
waived); Jacobs v. Satterwhite, 65 S.W.3d 653, 655-56 (Tex. 2001) (holding that
party waives error by failing to raise issue on appeal); Wheeler v. Methodist Hosp.,
95 S.W.3d 628, 646 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (stating that issue
in motion for rehearing is waived if original brief "is not sufficient to acquaint the
Court with the issue and does not present an argument that would allow the court to
decide the issue"). Moreover, in Thompson, the appellants did not raise an issue
concerning any purported discovery abuse. Therefore, this Court's opinion contains
no discussion relevant to this case. 
4. But see Hall v. Diamond Shamrock Refining Co., L.P., 82 S.W.3d 5, 22-23 (Tex.
App.--San Antonio 2001), overruled on other grounds, 168 S.W.3d 164 (Tex. 2005)
(holding cap is not affirmative defense and automatically applies in all cases where
plaintiff does not plead and prove exception to cap); Seminole Pipeline Co. v. Broad
Leaf Partners, Inc., 979 S.W.2d 730, 759 (Tex. App.--Houston [14th Dist.] 1998)
(same). 
5. See Tex. Rev. Civ. Stat. art. 4590i. Act of June 16, 1977, 65th Leg., R.S., ch. 817,
§ 11.02, 1977 Tex. Gen. Laws 2039, 2052 (formerly Tex. Rev. Civ. Stat. art. 4590i). 
Article 4590i was repealed by Act of June 2003, 78th Leg., R.S., ch. 204, § 10.09,
2003 Tex. Gen. Laws 847, 884.