**Opinion issued October 23, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00395-CV

————————————

## IN THE INTEREST OF G.A., A CHILD

———————————————————————————————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-02734J**

———————————————————————————————————

## MEMORANDUM OPINION

After a bench trial, the trial court terminated a mother's parental rights to her child. The mother appeals, arguing that the evidence of the grounds for termination and of the child's best interest was legally and factually insufficient.[1] We affirm the termination decree.

---

[1]    *See* TEX. FAM. CODE § 161.001(b)(1)–(2).

## Background

In May 2017, the Texas Department of Family and Protective Services received a report alleging A.R., pseudonymously referred to as Angela, had become incapacitated due to drug use while caring for her five-month-old daughter, G.A., pseudonymously referred to as Graciella. Angela and Graciella were at the Santa Maria Hostel, a women's recovery home where Angela was receiving aftercare for substance abuse following completion of a court-ordered residential treatment program. A. Murphy, a Santa Maria staff member, found Angela leaning against a cabinet. According to Murphy, Angela was unconscious and Graciella, who was wrapped in an infant carrier on Angela's chest, was pinned between Angela and the cabinet. Murphy removed Graciella from the wrap and assisted Angela to a couch, where Angela remained unresponsive until emergency responders arrived.

The Department investigated and, asserting there was an immediate danger to Graciella's physical health or safety, sought appointment as Graciella's temporary managing conservator based on Angela's drug use and history of family-based services. The Department's petition included an allegation of a similar incident in August 2011, when Angela purportedly took Vicodin and lost consciousness while caring for another child.[2] The Department sought to terminate Angela's parental

---

[2] Angela has three children: (1) Graciella, (2) a seven-year-old daughter who was the subject of the August 2011 report and to whom Angela relinquished her parental

rights to that child; however, Angela relinquished her parental rights, and a family member adopted the child.

About two weeks after the Santa Maria incident, the trial court conducted an adversary hearing at which Angela personally appeared. The trial court made the Department Graciella's temporary managing conservator and ordered Angela to comply with a family-service plan and submit to immediate drug testing. Angela tested positive for hydrocodone and methadone, a prescription drug used to combat opioid addiction.

For most of this case, the Department's primary goal was family reunification, and Angela worked to complete the family services ordered by the court, such as submitting to a psychosocial evaluation, attending parenting classes and Alcoholics Anonymous/Narcotics Anonymous meetings, visiting with Graciella, and participating in individual therapy and substance-abuse counseling. Although Angela continued to test positive for methadone, which she obtained from a clinic with a valid prescription and used under medical supervision, she did not test positive for any other controlled substance during the pendency of the case.

As trial approached, however, the Department's primary goal changed to termination of parental rights and unrelated adoption. The evidence presented to the

---

rights, and (3) an adult son who lives independently. The record does not indicate whether Angela's son ever was the subject of a Department investigation or suit.

trial court showed that even though Angela had completed her family-service plan, the Department had lingering concerns about returning Graciella to Angela's care.

D. Tate, the assigned caseworker, explained that the goal of any family-service plan is to assist the parent in acquiring and demonstrating the skills necessary to safely and appropriately parent her child. For Angela, it was the Department's desire that Angela demonstrate the willingness to protect Graciella from harm, ability to meet Graciella's emotional and developmental needs, prioritization of Graciella's needs, and assembly of a stable support system. But in Tate's view, Angela had not achieved these objectives. For example, although Angela completed two parenting classes, Tate found Angela to be "all over the place" during visitation with Graciella. And Angela engaged in several behaviors that Tate deemed inappropriate or unsafe for visitation, including failing to appropriately supervise Graciella, forcing Graciella to eat food directly from Angela's mouth, and utilizing a lighter as a toy.

Angela's history of drug use also concerned the Department. Angela acknowledged that she had relapsed at least three times after participating in and completing substance abuse treatment in the past. She testified that she had been abusing drugs for at least five years, but her self-reporting suggested a longer history of drug use. Angela confessed to an evaluator that she had used cocaine for more than ten years and became addicted to Vicodin while suffering from pain associated

with cocaine withdrawal. The Department presented evidence confirming Angela's cocaine use in February and March 2013, which, according to Angela, was the last year she used cocaine. The record also includes opioid-positive drug test results in October 2013 and May 2017 with no evidence of a valid prescription for those dates.

At the time she lost consciousness at Santa Maria, Angela acknowledged taking as many as ten Vicodin per day. Although she disputed the severity of the Santa Maria incident and the risk of harm to Graciella, Angela admitted that, on that day, she was only recently out of court-ordered residential treatment for substance abuse, was still receiving aftercare, and had voluntarily combined her prescription methadone with Norco, another form of hydrocodone. A counselor specializing in the treatment of opioid-dependent mothers testified that methadone and Norco should not be taken together and, if they are, may cause an overdose or deep sleep.

The trial court heard testimony and reviewed documentary evidence that Angela's history of drug use had led to multiple incarcerations. In the year Graciella was born, Angela was charged with and imprisoned on two offenses involving controlled substances. More specifically, Angela pleaded guilty to two counts of possession of a controlled substance and was sentenced to 34 days in jail.

At trial, Angela asked the trial court not to terminate her parental rights because she had made progress toward sobriety and acquiring parenting skills, which her therapist D. Bradley confirmed. Bradley worked with Angela in individual

5

counseling, substance abuse counseling, and parenting classes. Bradley testified that Angela was responsive, cooperative, and truthful in therapy, and had taken steps toward reunification. For example, Angela had been sober for nine months, had completed counseling, was living with her parents, and had secured two part-time jobs. Although Bradley recognized the risk that Angela would relapse, even while taking methadone, she believed that Angela could make sufficient progress to be reunited with Graciella if Angela was given more time and additional services.

Angela also expressed to the trial court her desire that Graciella be placed with Angela's brother and sister-in-law. The trial court heard evidence, however, that Angela's request could not be accommodated because her family had elected not to participate in required drug testing. Instead, Graciella had been placed in an adoptive foster home. In the eleven months Graciella resided in the foster home, she had bonded with the foster family, and her medical and developmental needs were being met there. Graciella's foster mother testified about her future wishes for Graciella— that she would pursue an education and a profession—and pledged to provide a safe, stable home until Graciella was at least 18 years old.

At the end of trial and after considering all the evidence, the trial court terminated Angela's parental rights on the grounds advocated by the Department. The trial court's termination decree includes findings that Angela engaged in the predicate acts listed in Family Code Sections 161.001(b)(1)(D) (endangering

6

conditions), (E) (endangering conduct), (O) (failure to comply with court-ordered family service plan), and (P) (using controlled substance after completing court-ordered program for substance abuse). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O), (P). The trial court also made the Department Graciella's sole managing conservator.

## Termination of Parental Rights

Angela presents four sufficiency issues on appeal. She contends the evidence is legally and factually insufficient to support the trial court's findings that she committed predicate acts or omissions under Subsections (D), (E), (O), and (P) and that termination of her parental rights was in Graciella's best interest.

## A.     Standard of review

A parent's rights to the care, custody, and control of her child is a precious liberty interest protected by the Constitution. *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Accordingly, a termination proceeding is strictly scrutinized on appeal. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support the decision to terminate parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002); *see Santosky*, 455 U.S. at 747–48. Evidence is legally sufficient if it is "such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the [Department] bears the burden of proof." *J.F.C.*, 96 S.W.3d at

265–66; *see* TEX. FAM. CODE § 101.007 (defining "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established"). We review "the evidence in the light most favorable to the judgment," meaning that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*

In a factual sufficiency review, we consider the entire record, including evidence both supporting and contradicting the finding. *See id.*; *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (quoting *J.F.C.*, 96 S.W.3d at 266).

In a proceeding to terminate the parent-child relationship, the Department must establish by clear and convincing evidence that one or more of the predicate acts or omissions listed in the Family Code occurred and that termination is in the

8

best interest of the child. TEX. FAM. CODE § 161.001(b). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

## B. Section 161.001(b)(1) predicate findings

The trial court terminated Angela's parental rights on predicate findings that she (1) knowingly placed or knowingly allowed Graciella to remain in conditions or surroundings that endangered Graciella's physical or emotional well-being; (2) engaged in conduct or knowingly placed Graciella with people who engaged in conduct that endangered Graciella's physical or emotional well-being; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain Graciella's return; and (4) continued to abuse a controlled substance after completion of a court-ordered treatment program. *See* TEX. FAM. CODE § 161.001(b)(1)(D)–(E), (O), (P). "Only one predicate finding under [S]ection 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We begin with the Subsection (E) endangerment finding.

The predicate act of endangerment is satisfied if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.*

§ 161.001(b)(1)(E). In this context, "endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* To determine whether termination is appropriate, courts may look to parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The Texas Supreme Court has acknowledged that "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345. Drug activity can constitute endangerment even if it transpires outside the child's presence. *Boyd*, 727 S.W.2d at 533; *see J.O.A.*, 283 S.W.3d at 345; *Walker*, 312 S.W.3d at 617.

Much of the evidence regarding Angela's history of drug use is not disputed. This case began when Angela combined hydrocodone and methadone, causing her to lose consciousness while Graciella was bound to her chest. Angela concedes that this incident, which occurred not long after she completed court-ordered residential treatment for substance abuse, risked physical injury to Graciella and was "troubling

10

to the point where immediate intervention was necessary," but she disagrees that the evidence sufficed to show endangering conduct under Subsection (E). The Department counters that Angela takes too narrow a view of the evidence, and we agree with the Department.

The record contains evidence of a long history of drug use, treatment, and relapse. Angela self-reported abusing cocaine for more than a decade. She tested positive for cocaine in February and March 2013. According to her own testimony, Angela stopped using cocaine in 2013 but then became addicted to Vicodin. When this case began, Angela admitted taking as many as ten Vicodin pills per day. Her attempts to address her addiction are commendable—she has participated in and completed substance abuse treatment at least three times. But she has relapsed on each occasion, which supports an inference that she may relapse again in the future. *See In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

The adverse effect of Angela's drug use on her ability to parent is also established by the evidence of more than one intervention by the Department and periods of incarceration. That is, Graciella is the second of Angela's children to become the subject of Department intervention, and she is the second of Angela's children to be put at risk of physical injury due to drug use. Only months before

11

Graciella was born, Angela pleaded guilty to and was incarcerated on two drug possession charges.

Angela asserts that the evidence of endangering conduct is fatally undermined by evidence that she has "been progressing in her therapy with her counselor" and "will eventually demonstrate that she can be protective" of Graciella. Such evidence of improved conduct, especially of short-duration, does not preclude the trial court from reasonably forming a firm belief that Angela's acts or omissions under Subsection (E) supported termination. *See J.O.A.*, 283 S.W.3d at 346 ("While the recent improvements made by [the parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices.").

Viewing the evidence in the light most favorable to the termination, we hold that the trial court reasonably could have formed a firm belief or conviction of endangerment and, therefore, the evidence was legally sufficient. *See id.* at 345; *Walker*, 312 S.W.3d at 617. We further hold that, viewed in light of the entire record, any disputed evidence was not so significant that the trial court could not reasonably have formed a firm belief or conviction of endangerment. Accordingly, we hold that the evidence was factually sufficient to support the trial court's finding under Subsection (E). *See* TEX. FAM. CODE § 161.001(b)(1)(E).

We overrule Angela's first issue challenging the sufficiency of the evidence supporting the trial court's Subsection (E) endangerment finding. Because we have found that the evidence is both legally and factually sufficient to support the predicate finding under Subsection (E), we need not address Angela's issues challenging the sufficiency of the evidence for alternative predicate findings under Subsections (D), (O), and (P). *See A.V.*, 113 S.W.3d at 362. We next turn to the best-interest finding.

## C.     Section 161.001(b)(2) best-interest finding

A strong presumption exists that a child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). In determining whether termination of a mother's parental rights is in a child's best interest, we consider several nonexclusive factors, including (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody to promote the best interests of the child, (6) plans for the child by the person seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the

13

parent that may indicate that the parent-child relationship is improper, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department is not required to prove all these factors, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27. Evidence establishing one of the predicate acts under Section 161.001(b)(1) also may be relevant to determining the child's best interest. *See id.* at 27–28.

Several *Holley* factors support the trial court's finding that termination was in Graciella's best interest. Because Graciella was only sixteen months old at the time of trial, she was too young to express her desires. But the trial court could consider that Graciella has bonded with her foster family, is well cared for by them, and has spent minimal time with Angela. *See In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Stability and permanence are paramount in the upbringing of children."). Graciella has been in the same foster home since she came into the Department's care at the tender age of five months. The evidence was undisputed that the foster home is drug-free, safe, stable, and includes the possibility of adoption. *See Rogers v. Dep't of Family & Protective Servs.*, 175 S.W.3d 370, 378 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (concluding that successful foster placement with possibility of adoption supported best-interest

finding); *In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (affirming best-interest finding when child was thriving in foster care). Angela agrees that the foster home is meeting Graciella's present physical and emotional needs. Although Angela argues that it would be speculative to conclude that the foster home will continue to meet Graciella's needs in the future, the record does not support that argument. The trial court heard testimony that Graciella's foster family is invested in her growth and planning for her future. This evidence relevant to the first, second, and sixth *Holley* factors supports the trial court's termination decision.

The evidence discussed in support of the endangerment finding also supports the trial court's termination decision. *See C.H.*, 89 S.W.3d at 28. Graciella came into the Department's care because Angela took an incapacitating combination of drugs while Graciella was bound to her body—a circumstance that, according to more than one trial witness, risked serious physical injury to Graciella. And the trial court heard evidence that this was not the first time Angela had become incapacitated because of drug use while caring for a young child. Although Angela testified that she stopped using opioids in May 2017 and had only tested positive for methadone since that time, her testimony established a history of relapse after periods of sobriety. The trial court could reasonably infer from this evidence that Angela was at risk for continuing drug use. *See In re W.J.B.*, No. 01-15-00802-CV, 2016 WL 1267847, at *9 (Tex. App.—Houston [1st Dist.] Mar. 31, 2016, no pet.) (mem. op.) (stating that

15

"evidence of past misconduct or neglect can be used to measure a parent's future conduct"); *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (parent's drug use supports finding that termination is in best interest of child). Such inference is relevant not only to Graciella's present and future emotional and physical needs and dangers but also to the stability of Angela's home, as contrasted with the stability of Graciella's foster home. *See In re J.M.*, No. 01-14-00826-CV, 2015 WL 1020316, at *7 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.). Consequently, the third, fourth, and seventh *Holley* factors also weigh in favor of termination.

The Department also presented evidence that Angela's visits with Graciella were not always appropriate. Department caseworker Tate described Angela as "all over the place" during visitation. On one occasion, Angela held Graciella down and fed Graciella food from Angela's mouth, a practice Tate explained was unhygienic. Tate also testified about other concerning conduct during visitation, including when Angela used a lighter as a toy.[3] This is additional evidence indicating an inappropriate parent-child relationship in support of the trial court's termination decision under the eighth *Holley* factor.

---

[3] Tate also generally described an incident during which Angela photographed Graciella after removing her clothing. Tate's testimony does not provide any additional context for her opinion that this action was inappropriate.

16

Angela emphasizes that, at the time of trial, she was employed, albeit part-time; had stable housing with her parents; and had completed parenting classes and counseling. And the testimony of Bradley, Angela's therapist, supports that Angela was engaged in family services and making progress, even if additional counseling was required before Graciella could be returned to Angela's care. This is some evidence that Angela is amenable to availing herself of programs that can improve her parenting and weighs against termination under the fifth *Holley* factor. *See Horvatich v. Tex. Dep't of Protective & Regulatory Servs.*, 78 S.W.3d 594, 603 (Tex. App.—Austin 2002, no pet.) (reversing and remanding termination suit based on factually insufficient evidence of best interest and noting that "passage of time" may afford parent opportunity to better demonstrate parenting ability). But this evidence is not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination was in Graciella's best interest in light of all other evidence. *See Wyatt v. Dep't of Family & Protective Servs.*, 193 S.W.3d 61, 69 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (rejecting argument that children's best interest would be served by keeping them in foster care indefinitely until reunification could be achieved in lieu of termination because such indefinite placement "fails to recognize the children's need for stability and permanency").

Considering the entire record, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Angela's

17

parental rights was in Graciella's best interest. We overrule Angela's fourth issue challenging the sufficiency of the evidence to support the best-interest finding.

## Conclusion

We affirm the decree terminating parental rights.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.